**Carol A. ROTH, as Executor of the Estate of Floyd W. Striffler, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. CIV–83–1007C.**

United States District Court,
W.D. New York.

April 17, 1985.

 

Denis A. Kitchen, Jr., Clarence, N.Y., for plaintiff.

Salvatore R. Martoche, U.S. Atty., Buffalo, N.Y. (Sonia C. Jaipaul, Asst. U.S. Atty., Buffalo, N.Y., of counsel), for defendant.

CURTIN, Chief Judge.

This is an appeal from a final decision by the Secretary of Health and Human Services denying payment of extended care benefits for care received by the decedent while he was in a skilled nursing facility. Jurisdiction is based upon section 1869(b) of the Social Security Act, 42 U.S.C. § 1395ff(b). Both parties have moved for judgment on the pleadings.

I.

Floyd Striffler was transferred from Lockport Memorial Hospital to the Briody Nursing Home on December 9, 1981. Briody is a skilled nursing care facility. On the same day, Striffler's daughter was notified that the services to be furnished to her father did not meet the requirements for coverage under Medicare. This finding was affirmed by the Medicare intermediary and upon reconsideration. A hearing before an Administrative Law Judge [ALJ] was held in September 1982. The ALJ issued his decision on October 7 and concluded that Mr. Striffler did not require or receive skilled nursing care or other skilled rehabilitative services on a daily basis at any time on or after December 9, 1981. The ALJ's decision became the final decision of the Secretary on April 14, 1983, when the Appeals Council denied review. This appeal followed.

II.

On November 10, 1981, at age 78, Mr. Striffler was admitted to Lockport Memorial Hospital with a fractured left hip and atherosclerotic myocardial disease. Surgery was performed on his hip on the date of admission. A long-stemmed prosthesis was inserted while Mr. Striffler was under a spinal anesthesia.

Mr. Striffler also suffered from confusion during his hospital stay. Haldol was prescribed to address this problem, and dosages were reduced over time. A transurethral resection of the prostate was performed on December 1, 1981. Mr. Striffler experienced some trouble urinating and required catheterization. He was discharged from Lockport Memorial on December 9, 1981.

Mr. Striffler entered Briody Nursing Home on December 9. His treatment program included gait training, a bland diet, and bladder training, but it is not clear that he ever received bladder training. He could walk with the assistance of a walkerette (Tr. at 95). The record also indicated that he was given haldol for "restlessness" and "agitation" from January 7–15, 1982. This prescription was effective. During the same period, motrin was prescribed for arthritis. Mr. Striffler had also been given haldol from December 21 through December 25, 1981. Tr. at 85. Clots were found in his urine on December 23. No clots were noted thereafter. *Id.*

On the forms reflecting Mr. Striffler's transfer to Briody, it was noted that his condition was unstable, so that a registered nurse needed to evaluate the need for medication and treatment on a daily basis. It was also noted that there was a "high probability that complications would arise in caring for the patient without skilled nursing supervision of the treatment program on a daily basis." Tr. at 101. Moreover, Mr. Striffler was said to need "complex skilled nursing supervision" seven days a week and skilled physical therapy a minimum of five days a week. Tr. at 101–02. The record contains a sumamry of his physical therapy. The summary consists of reports by physical therapists indicating some progress but continued problems with rapid foot movements. Tr. at 92–96.

A report dated January 6, 1982, was filed by Dr. C.R. Gona. Dr. Gona was the physician who performed the transurethral resection upon Mr. Striffler. He noted that Mr. Striffler was blind, had very poor hearing, and was prone to confusion. He concluded that the patient had "multiple problems" and that he needed "skilled nursing care and rehabilitation." Tr. at 106. However, Dr. Gona's report listed Mr. Striffler's age as 89, when he was actually 78. Another physician, Dr. Carl Conrad, also stated that Mr. Striffler required a skilled nursing facility due to severe osteoarthritis. Tr. at 108.

Curiously, the forms indicating the need for skilled care and close supervision were prepared by the same registered nurse who prepared the notice sent to Mr. Striffler's daughter indicating non-coverage under Medicare. *Compare* Tr. pp. 50, 101–02. The notice of non-coverage was the only statement in the record from a professional indicating that Mr. Striffler did not need skilled care. The ALJ stated in his opinion that forms prepared by hospital personnel "clearly stated" that Mr. Striffler needed "custodial care." The ALJ did not refer to any particular report. The Secretary's brief echoes the ALJ's remark. The Secretary also does not cite a hospital report. Instead, she cites the ALJ's unannotated statement. The court's review of the record found no "clear statement" to this effect from hospital personnel.

### III.

The Social Security Act provides that benefits shall be paid to eligible persons who receive "post-hospital extended care services." 42 U.S.C. § 1395d(a)(2). Post-hospital extended care services are services given in a skilled nursing facility after a period of hospitalization of at least three days. 42 U.S.C. § 1395x(i). Extended care services include nursing care provided under the supervision of a registered nurse, physical therapy, medication, and other services provided by skilled nursing facilities. 42 U.S.C. § 1395x(h). However, benefits are not paid for "custodial care." 42 U.S.C. § 1395y(a)(9).

Custodial care is not defined in the Social Security Act. Courts generally define it as care which can be provided by non-professionals and which does not require the continued attention of trained personnel.

*Kuebler v. Secretary of Health and Human Services*, 579 F.Supp. 1436, 1438 (E.D. N.Y.1984); *Hayner v. Weinberger*, 382 F.Supp. 762, 766 (E.D.N.Y.1974); *Samuels v. Weinberger*, 379 F.Supp. 120, 123 (S.D. Ohio 1973).

The Secretary's regulations provide that post-hospital skilled nursing care is covered only if the services are 1) ordered by a physician, and 2) require skills of persons such as physical therapists. 42 C.F.R. §§ 409.30, 409.31(a). A skilled service is one which is "so inherently complex that it can be safely and effectively performed only by, or under the supervision of, professional or technical personnel." 42 C.F.R. § 409.32(a). Services which are not normally "skilled" are covered if the patient has complications requiring the attention of a professional. 42 C.F.R. § 409.-32(b).

■ The issue in this case is whether or not Mr. Striffler required and received skilled nursing care. The court must take into consideration the claimant's physical condition as a whole and the record of the services provided. *Kuebler v. Secretary of Health and Human Services*, 579 F.Supp. at 1438. The findings of the Secretary cannot be upset unless they are unsupported by substantial evidence. 42 U.S.C. §§ 1395ff(b)(1), 405(g). Substantial evidence is evidence which a reasonable mind accepts as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Opinions of treating physicians are not binding upon the Secretary, but they are entitled to substantial weight. Failure to accord such evidence such consideration undermines the Secretary's conclusion. *Kuebler v. Secretary of Health and Human Services*, 479 F.Supp. at 1438.

■ The Secretary's conclusion in this case was based upon her determination that the services such as gait training and assistance with such things as grooming, bathing, etc., were custodial. Tr. at 10. The court concludes that this determination is not supported by substantial evidence.

The only statement from a health care professional indicating that Mr. Striffler did not receive covered services is the notice mailed to his daughter. Tr. at 50. This statement is contradicted on forms completed the next day by the same person who mailed the notice. Tr. at 101–02. The latter forms specify in clear language the need for professional supervision.

The record also contains the reports concerning the claimant's physical therapy. Many sessions of therapy were administered, all under the supervision of a physical therapist. Moreover, there is the opinion of Dr. Gona that the patient needed professional care. The patient also needed medication for arthritis and agitation.

The Secretary's finding appears to be based upon a sense that the care provided Mr. Striffler could have been supplied by a lay person. However, the Secretary did not give adequate weight to the opinions of Dr. Gona and Dr. Conrad or to Mr. Striffler's condition as a whole as reflected by the combination of his ailments.

The court does not lightly reject the Secretary's conclusion. However, in a close case such as this one, the beneficient and remedial purposes of the Social Security Act indicate that the question of coverage should be resolved in the claimant's favor. This result is also suggested by an example provided in the regulations. A patient who has surgery for the insertion of a hip prosthesis may need continuous monitoring by skilled personnel to detect postoperative complications. Persons with psychological problems in addition to physical ailments present difficult treatment problems after requiring skilled care. *See,* 42 C.F.R. § 409.33(a)(2).

### IV.

The decision of the Secretary is reversed. The case is remanded to the Secretary solely for the purpose of computing benefits.

So ordered.