**Genevieve BABULA, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. CIV–85–1438C.**

United States District Court, W.D. New York.

March 10, 1987.

Robert Abrams, N.Y. State Atty. Gen. (Douglas S. Cream, Asst. N.Y. State Atty. Gen., of counsel), Buffalo, N.Y., for plaintiff.

Roger P. Williams, U.S. Atty. (Jacqueline Stover, Sp. Asst. U.S. Atty., of counsel), Buffalo, N.Y., for defendant.

CURTIN, Chief Judge.

This is an action brought by the plaintiff to review a final decision of the Secretary denying plaintiff's payment of benefits under the Hospital Insurance portion of the Federal program of health insurance (Medicare Part A). Pursuant to 42 U.S.C. § 1395ff, judicial review is governed by 42 U.S.C. § 405(g).

The relevant history of this case can be summarized as follows. In February of 1982, plaintiff was transferred from the Erie County Home and Infirmary [ECH & I] to Erie County Medical Center [ECMC] after developing a high fever. At this time, plaintiff was 71 years old and suffered from deep vein thrombophlebitis, hypoprothrombinemia secondary to Coumadin, classic rheumatoid arthritis, fractures of the left and possibly right hip, diabetes mellitus, and arteriosclerotic heart disease (Tr., pp. 48, 74). On discharge from ECMC, plaintiff was on Diogomin, Coumadin, and Insulin injections daily; Colace and oral vitamins twice a day; and Mylanta after meals and before sleep (id.). At this time, she also required total help to perform all of her physical activities, including walking, eating, and toileting. Plaintiff's condition also necessitated close observa-

tion during this time (Tr., p. 75). On April 8, 1982, plaintiff was transferred back to the ECH & I. Dr. John Sauer, plaintiff's treating physician, certified on April 19 and May 19, 1982, that plaintiff required skilled nursing (Tr., p. 78). Plaintiff's medication treatment was changed to Digoxin and Coumadin orally and Insulin injections daily. Plaintiff's treating physician also noted on June 18, 1982, that plaintiff's P.T. (blood clotting) time was being checked weekly (Tr., p. 80). Plaintiff's condition continued to deteriorate until she was transferred back to ECMC on July 11, 1982 (Tr., p. 81).

On April 26, 1982, plaintiff was informed by the local Medicare intermediary that the medical services she had received at the ECH & I beginning on April 8, 1982, and ending July 11, 1982, did not meet the definition of skilled nursing or rehabilitative services under the Medicare program and therefore would not be paid for by that program (Tr., p. 29). *See* 42 U.S.C. § 1395x(h); 42 C.F.R. § 409.33. This determination was ultimately reaffirmed by the ALJ (Tr., pp. 13–17). This became the final decision of the Secretary on June 16, 1986 (Tr. pp. 6–7). After further review of the record, the Secretary's regional counsel determined that the ALJ did not apply the proper legal standard in plaintiff's case and that, therefore, a remand is appropriate now. Plaintiff has moved for an outright reversal of the Secretary's decision.

In addition to the above-said evidence, Utilization Review Nurse Mary C. Fussell, R.N., also submitted an affidavit and report dated October 27 and 28, 1982, concerning plaintiff's stay at ECH & I during the time in question in this case. In Nurse Fussell's view, plaintiff required and received skilled nursing care and service as defined in the Social Security Act during her stay at ECH & I (Tr., pp. 182–92). More specifically, Nurse Fussell gave the opinion that plaintiff's deep vein thrombophlebitis indicated the presence of blood clots firmly attached to vessel walls causing inflamation. She noted also the risk of embolism (Tr., p. 187). Nurse Fussell said

that plaintiff's treating physician, Dr. John Sauer, was apparently aware of this risk and had consequently prescribed Coumadin as an oral coagulant to treat her thrombophlebitis. Because this drug necessitated close monitoring of plaintiff's P.T. time, plaintiff was tested twice a week during her first three weeks at ECH & I and once a week thereafter. Nurse Fussell stated that plaintiff's Coumadin dosage was changed four times during her stay at ECH & I (Tr., p. 188). Upon her review of plaintiff's overall condition and the continual treatment plaintiff received at ECH & I, Nurse Fussell determined that the level-of-care requirements of Medicare Part A coverage had been met (Tr., pp. 183, 192).

In spite of this, the ALJ in this case found that during her stay at ECH & I between April 8 and July 11, 1982, plaintiff "received no specifically identifiable services which were of such a nature that they could only be performed by skilled nursing personnel on an in-patient basis" (Tr., p. 6.)

The Secretary now concedes that the ALJ did not apply the proper legal standard in reviewing plaintiff's claim and now argues that a remand is necessary to obtain new evidence, *i.e.*, the analysis of a medical advisor (Item 7, pp. 2–4). The Secretary argues that this new evidence would aid the Secretary to assess plaintiff's condition to determine whether, taken as a whole, it required an overall plan of management and evaluation. *See* 42 C.F.R. § 409.33. As authority for this position, the Secretary cites 42 U.S.C. § 405(g), which states, in pertinent part, that the court

> may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

The Secretary also cites several Second Circuit decisions which have construed section 405(g) not to preclude the remand of cases in which the Secretary has applied errone-

ous legal standards and arrived at a determination unsupported by substantial evidence. *Aubeuf v. Schweiker*, 649 F.2d 107, 116 (2d Cir.1981); *accord Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 644 (2d Cir.1983).

In response, plaintiff argues that the application of specific medical terminology to previously existing symptoms is not "new evidence" within the meaning of 42 U.S.C. § 405(g). *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983). In addition, plaintiff says that the Secretary does not offer "good cause" for the requested remand. *See* 20 C.F.R. § 904.989; 42 C.F.R. § 405.750(b)(2); *Steinberg v. Schweiker*, 549 F.Supp. 114, 117 (S.D.N.Y.1982). Finally, plaintiff says that, contrary to the Secretary's view, this court can make a decision based on the present record. *Roth v. Secretary of Health and Human Services*, 606 F.Supp. 636 (W.D.N.Y.1985); *Bluvband v. Heckler*, 730 F.2d 886 (2d Cir.1984).

I believe that, given the evidence in the present record, a remand is not necessary here. As this court noted in its *Roth* decision, the opinion of a treating physician—like Dr. Sauer in this case—is entitled to substantial weight here. Dr. Sauer has indicated on several occasions that plaintiff required skilled nursing care during the time relevant to this action (Tr., pp. 78–81). As was indicated above, this opinion is entirely consistent with the opinion of Nurse Fussell (Tr., pp. 182–92). Therefore, I find that plaintiff's condition as a whole necessitated skilled nursing care between April 8 and July 11, 1982.

Therefore, the Secretary's motion for a remand is denied. Plaintiff's motion is granted. The decision of the Secretary below is reversed in all respects. This case is now remanded back to the Secretary for calculation and payment of benefits. If plaintiff's attorney plans to move for attorney's fees in this case, I direct that this motion be made in accordance with the previous decisions of this court. *See*

*Compton v. Secretary*, CIV–83–1402 (dated March 18 and April 3, 1986).

So ordered.