Ruby ISRAEL, by her representative and next friend, Melvin R. GEYER, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

No. Civ–86–37C.

United States District Court, W.D. New York.

Sept. 11, 1987.

Robert Abrams, Atty. Gen. of the State of N.Y. (William D. Maldovan, Asst. Atty. Gen., of counsel), Buffalo, N.Y., for plaintiff.

Roger P. Williams, U.S. Atty. (Martin J. Littlefield, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for defendant.

CURTIN, Chief Judge.

This is an action brought on behalf of plaintiff Ruby Israel by her representative and next friend, Melvin Geyer [plaintiff] to review a final decision of the Secretary of Health and Human Services [the Secretary] denying payment under Medicare Part A, the hospital insurance portion of the federal program of health insurance for the aged and disabled. 42 U.S.C. § 1395 *et seq.* The Secretary's final decision was based on an administrative finding that the services for which payment was denied were not covered by Medicare because they were "custodial," and did not involve skilled nursing care. The procedural history of this case is adequately set forth in the parties' papers and need not be repeated here.

The facts of this case may be summarized as follows. Plaintiff was admitted to the Genesee Memorial Hospital on April 13, 1982, due to a displaced left hip fracture (Tr., p. 100). At that time, it was also noted that she suffered from organic brain syndrome and arteriosclerotic heart dis-

ease with arrhythmia. *Id.* The following day, plaintiff underwent an operation to pin the fracture in her left hip, and on April 26, 1982, she was released from the hospital "to continue with her daily physiotherapy and gait training using parallel bars and a walker." (Tr., p. 51.) Upon discharge, plaintiff was transferred to Leroy Village Green Nursing Home and Health Related Facility [Village Green]. It is the services which plaintiff received at Village Green between April 26 and August 4, 1982, that are the subject of this lawsuit.

The Social Security Act provides that benefits shall be paid to eligible persons who receive "post-hospital extended care services." 42 U.S.C. § 1395d(a)(2). Post-hospital extended care services are services provided in a skilled nursing facility after a period of hospitalization for at least three days. 42 U.S.C. § 1395x(i). These services include nursing care provided under the supervision of a registered nurse, physical therapy, medication, and other services provided by skilled nursing facilities. 42 U.S.C. § 1395x(h). However, benefits are not paid for "custodial care." 42 U.S.C. § 1395y(a)(9).

While "custodial care" is not defined in the Social Security Act, courts have generally defined it as care which can be provided by non-professionals and which does not require the continued attention of trained personnel. The Secretary's regulations provide that post-hospital skilled nursing care is covered only if the services are 1) ordered by a physician, and 2) require skills of persons such as physical therapists. 42 C.F.R. § 409.30, 409.31(a). A skilled service is one which is "so inherently complex that it can be safely and effectively performed only by, or under the supervision of, professional or technical personnel." 42 C.F.R. § 409.32(a). Services which are not normally "skilled" are covered if the patient has complications requiring the attention of a professional. 42 C.F.R. § 409.-32(b).

As I noted in my recent decision in *Roth v. Secretary of Health and Human Services,* 606 F.Supp. 636 (W.D.N.Y.1985), the question of whether or not a plaintiff required and received skilled nursing care in a case like the present one must be resolved after consideration of the plaintiff's physical condition as a whole and the record of the services provided. *Id.* at 639, *citing Kuebler v. Secretary of Health and Human Services,* 579 F.Supp. 1436, 1438 (E.D.N.Y.1984). Of course, the findings of the Secretary cannot be upset unless they are not supported by substantial evidence. 42 U.S.C. §§ 1395ff(b)(1), 405(g).

The record of the instant case shows that, during the period of April 16—August 4, 1982, plaintiff required a variety of different medical care services. At the time of her admission to Village Green on April 26, Registered Nurse Helen Church certified that plaintiff's condition required that she receive skilled nursing supervision by way of 1) physical therapy five times a week with minimal weight-bearing to her left hip, and 2) daily evaluation of her skin for any breakdown. Nurse Church also noted that plaintiff was prescribed Digoxin, Tylenol Extra Strength, and Mellaril as medications, and required reality orientation because of her confused mental state (Tr., pp. 86–87). This view was shared by Dr. M. Williams, M.D., who indicated on that date of plaintiff's admission to Village Green that plaintiff required skilled nursing care to observe and assess her total needs. On June 7, 1982, Dr. Williams certified that skilled care continued to be necessary (Tr., pp. 54–55, 99, 101).

Nurse Mary Fussell, R.N., a Utilization Review Nurse, also submitted a skilled nursing assessment which stated that plaintiff required skilled nursing care (Tr., pp. 102–08). Nurse Fussell observed that Dr. Asher, the doctor who performed plaintiff's hip surgery, noted that plaintiff's muscles and bone had not yet healed following the hip pinning and that because of the bone instability, careful attention and proper instruction were necessary during ambulation. She believed that plaintiff's advanced age, arteriosclerotic heart disease, and organic brain syndrome complicated her therapeutic and nursing management so that skilled nursing was mandated (Tr., pp. 103–04).

Nurse Fussell also indicated that the medications plaintiff received required careful fluid monitoring. She also noted that her medicinal dosages were changed during her stay at Village Green (Tr., p. 105). Nurse Fussell's testimony before the Administrative Law Judge [ALJ] on October 26, 1982 (Tr., pp. 28–39), is essentially consistent with her written evaluation. Plaintiff was also evaluated by four other registered nurses, as well as by Dr. James Zimmers, M.D., between April and June, 1982 (Tr., pp. 88–91). These reports all state that plaintiff needed skilled nursing care to monitor her fluid and medication levels, to monitor her skin for possible breakdown, and to give her regular weight-bearing therapy, as well as reality orientation and prescribed medication.

While this court notes that the record indicates that plaintiff also received a considerable amount of custodial care at Village Green between April 26 and August 4, 1982—e.g., assistance with walking, cleaning herself, and monitoring her food intake—it is this court's conclusion that plaintiff needed and received skilled nursing care between April 26 and August 4, 1982, and that the Secretary's finding to the contrary is not supported by substantial evidence. As I mentioned above, both the plaintiff's treating physicians and the utilization review nurse indicated in the record that plaintiff required skilled nursing care during this time. As was recently stated in the case of *Walsh v. Secretary of U.S. Dept. of Health and Human Services*, 636 F.Supp. 358, 361–62 (E.D.N.Y.1986), where both an attending physician and the utilization review committee certify that an individual requires post-hospital extended care services, this decision is binding on the Secretary. *Cf., Roth v. Secretary of Health and Human Services, supra* at 639.

Although the Administrative Law Judge noted in passing the report of Mary C. Fussell, a utilization review nurse, and states that he had given consideration "to any implications and the opinions of doctors and registered nurses that the claimant required skilled nursing care," he then concludes that the Administrative Law

Judge is not bound by such opinion. However, he does not attempt to explain in any way why he did not follow the judgment of the doctors, nurses, and others who found that the plaintiff needed skilled care. A review of the record reveals that it was obvious that he could not make an explanation.

Given all of the above, the decision of the Secretary is reversed in all respects.

■   This case is now remanded back to the Secretary for the calculation of benefits. In addition, given the facts of this case, I find that the position of the Secretary is not substantially justified. Therefore, I find that plaintiff's attorney is entitled to fees pursuant to the Equal Access to Justice Act [EAJA], 28 U.S.C. § 2412. *See Compton v. Secretary of Health and Human Services*, CIV–83–1402C (March 18 and April 8, 1986) [Available on WESTLAW, DCT database]. The plaintiff's attorney shall file a detailed affidavit in support of his application within 30 days. Thereafter, the Secretary will be given 30 days to make its response.

So ordered.