Robert **GRIFFITH**, et al., Plaintiffs,

v.

Louis **SULLIVAN**, Secretary, Department of Health and Human Services, Defendant.

Civ. A. No. 86–2556–Y.

United States District Court,
D. Massachusetts.

April 16, 1992.

Jeffrey C. Page, Lynne E. Berry, Diane F. Paulson, Mass. Medicare Advocacy Project, Greater Boston Elderly Legal Services, Sarah Anderson, Greater Boston Legal Services, Boston, Mass., for plaintiffs.

Susan Poswistilo, Asst. U.S. Atty., Thomas Coons, Joel Tornari, Office of General Counsel, Dept. of Health & Human Services, Baltimore, Md., Gerard Keating, Dept. of Health & Human Services, Office of General Counsel, Washington D.C., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

On February 1, 1988, this Court denied the Secretary's previous motions to dismiss this class action for lack of subject matter jurisdiction and mootness. *Griffith v. Bowen*, 678 F.Supp. 942 (D.Mass.1988).[1] Both parties have now filed cross-motions for partial summary judgment concerning the validity of the screening list, created by the Secretary of Health and Human Services ("Secretary") to determine Medicare Part B eligibility. The Health Care Financing Administration determines what medical equipment is covered by Medicare. The screening list is comprised of those items of durable medical equipment which, in individual determinations, have previously been denied coverage. To promote the uniform application of coverage rules, requests for coverage for items on the

screening list are summarily denied. The result is a rigid type of *stare decisis.*

The plaintiffs, representing the class of individuals denied reimbursement for items on the list on or after September 3, 1980,[2] contend that the list denies them the individual consideration that Congress intended and tramples on their Fifth Amendment right to Due Process. Specifically, the class objects to a claimant's inability to contest what items were placed on the list, particularly before the Act was amended in 1987. The Secretary responds with his own motion for partial summary judgment, contending that, notwithstanding the validity of the list-method, all parties can, and always could, appeal denials of coverage pursuant to 42 U.S.C. § 1395ff (1988).

## I. THE MEDICARE ACT

Medicare coverage is determined pursuant to 42 U.S.C. § 1395 (1988). Part B insurance benefits are paid out of the Federal Supplementary Medical Insurance Trust Fund, which consists of premiums paid by eligible persons. 42 U.S.C. §§ 1395j, 1395t. Insurance carriers contract with the Health Care Financing Administration,[3] ("Financing Administration") to administer the program. 42 U.S.C. § 1395u. The carriers are provided with the Medicare Coverage Issues Manual ("Coverage Manual"), a compilation of national coverage decisions ("coverage decisions") made by the Financing Administration regarding certain items. The Coverage Manual also includes a predetermined list of those uncovered or partially covered

---

**1.** Regarding jurisdiction, this Court was not persuaded that benefit disputes, statutorily prohibited from review, were at issue. Instead the Court held that plaintiffs challenged the Secretary's methodology, a matter reviewable in accordance with the landmark Supreme Court decision, *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 674–78, 106 S.Ct. 2133, 2137–40, 90 L.Ed.2d 623 (1986). Jurisdiction was therefore founded in 28 U.S.C. § 1331 (1988). *See Griffith v. Bowen,* 678 F.Supp. at 944–45. The case was not moot merely because the Secretary paid benefits to the named plaintiffs in an attempt to "pick them off" and moot the action. The interests of the absent class members, even without class certification, prevented mootness. *Id.* at 947.

**2.** This Court certified the class on October 12, 1988 to consist of "Medicare Part B beneficiaries who submitted or who will submit a Part B durable medical equipment claim to the Secretary on or after September 3, 1980, and who had or will have the claim for Medicare Part B coverage of physician prescribed durable medical equipment denied by the Secretary based on the screening list of durable medical equipment...." Plaintiff Motion for Class Certification, allowed on October 12, 1988.

**3.** The Secretary's delegate, as authorized pursuant to 42 U.S.C. § 1395hh.

items, known as the screening list. When a claim is made, the insurance carrier looks to 42 U.S.C. § 1395y to determine if coverage is allowed and consults the Coverage Manual and screening list. An initial determination is then made. If coverage is permissible, then the carrier pays the claim out of the Trust Fund. If not, *i.e.* the specific medical equipment is on the screening list, coverage is denied. A dissatisfied claimant may request a *de novo* review determination and may submit written factual and legal evidence. 42 C.F.R. §§ 405.-807–405.810 (1991). After this, a claimant who remains aggrieved may appeal the review determination in a "carrier fair hearing" if the amount in controversy is between $100 and $500. 42 U.S.C. § 1395u(b)(3)(C); 42 C.F.R. §§ 405.820–405.872 (1991).[4] Carrier representatives serve as hearing officers and must render decisions in accordance with the Coverage Manual and screening list. The Supreme Court has upheld this carrier fair hearing process as unbiased and in fulfillment of due process. *See Schweiker v. McClure*, 456 U.S. 188, 196–97, 199–200, 102 S.Ct. 1665, 1670–71, 1672, 72 L.Ed.2d 1 (1982).

Prior to January 1987, only challenges to the Secretary's methodology were reviewable—Medicare Part B amount determinations were final. In the wake of *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), which held that, unlike Part B amount determinations, challenges to the Secretary's methodology regarding Part B benefit determinations were judicially reviewable, Congress amended the Medicare Act to provide for review of amount determinations for post-January 1987 claims, based on the amount in controversy. *See* 42 U.S.C. § 1395ff.[5]

## II. INDIVIDUAL DETERMINATIONS

The class interprets 42 U.S.C. § 1395y(a)(1)(A) as requiring that initial determinations be made on an individual basis. The section excludes payments "for any expenses incurred for items or services ... which ... are not reasonable or necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member," and goes on to enumerate excluded items or services.[6] Throughout the section, Congress uses the word "individual" to refer to the claimant, lending some support to the claim that Congress intended that individual attention be given to claims. The Supreme Court has also recognized the need for individual consideration under the Social Security Act. *Heckler v. Campbell*, 461 U.S. 458, 467, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983).

The Secretary, however, "shall prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter." 42 U.S.C. § 1395hh. This includes authority to make rules regarding classes of issues to avoid reconsideration of similarly situated claimants. *Heckler*, 461 U.S. at 467–68, 103 S.Ct. at 1957–58. In *Heckler*, a woman was denied disability status pursuant to the Social Security Act, 42 U.S.C. § 423, because her impairment fell within the medical vocational guidelines set up by the Secretary. These guidelines, designed to bring about uniformity and efficiency, listed those individual characteristics that rendered one employable and not disabled. *Id.* at 461, 103 S.Ct. at 1954. The guidelines were appropriately dubbed "the Grid," for its cross-section, matrix-type treatment of the factors relevant to

---

4. Claimants requesting $500 or more could appeal to an administrative law judge, 42 U.S.C. § 1395ff(b)(1)(C), (b)(2)(B), whose decisions are reviewable by the Appeals Council. 20 C.F.R. §§ 422.203, 422.205 (1991). If the amount in controversy exceeds $1000, the claimant is entitled to further judicial review. 42 U.S.C. § 1395ff(b)(1)(C), (b)(2)(B).

5. Section 9341 of the Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, 100 Stat. 1874 (1986), amended the Medicare Part B provisions to include administrative review for claims exceeding $500 arising after January 1, 1987.

6. The Secretary has also issued regulations delineating covered and non-covered items. 42 C.F.R. Part 411 (1991).

disability status.[7] The Grid was used in this manner: first, the Secretary assessed the individual's abilities in a hearing, during which the claimant could offer evidence of disability or claim that the Grid was inapplicable. *Heckler*, 461 U.S. at 467, 103 S.Ct. at 1957. Once assessed, the Secretary applied the Grid to determine disability.[8] For example, under Rule 202.10, at issue in *Heckler*, "a significant number of jobs exist for a person who can perform light work, is closely approaching advanced age, has limited education but who is literate and can communicate in English, and whose previous work has been unskilled." *Id.* at 462, n. 4, 103 S.Ct. at 1955, n. 4. The Secretary assessed the claimant's individual abilities in a hearing, compared those abilities with Rule 202.10 and held the claimant was not disabled. *Id.* at 462–63, 103 S.Ct. at 1954–55.

The Secretary, the Court held, properly exercised his rulemaking authority, pursuant to the Social Security Act, in creating the Grid. *Id.* at 468, 103 S.Ct. at 1958. The Court reasoned that, although Congress did contemplate individual determinations, *id.* at 467, 103 S.Ct. at 1957, the Secretary was not barred from resolving "classes of issues" through its rulemaking authority. *Id.* Indeed, rulemaking is preferred over a constant relitigation of claims by similarly situated claimants. *Id.* at 467–68, 103 S.Ct. at 1957–58. The rules were not "arbitrary or capricious," *id.* at 468, 103 S.Ct. at 1958, especially where claimants were afforded "ample opportunity both to present evidence relating to their own abilities and to offer evidence that the

guidelines do not apply to them." *Id.* at 467, 103 S.Ct. at 1957.

Moreover, by requiring some consideration of evidence, the Grid process did not engage in a purely mechanized determination. *See Brown v. Secretary of Health and Human Services*, 740 F.Supp. 28, 36 (D.Mass.1990); *DaRosa v. Secretary of Health and Human Services*, 803 F.2d 24, 26 (1st Cir.1986) (citing *Sherwin v. Secretary of Health and Human Services*, 685 F.2d 1, 4 (1st Cir.1982), *cert. denied, Picard v. Secretary of Health and Human Services*, 461 U.S. 958, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983)).

■ Though this matter, unlike *Heckler*, involves section 1395 of the Social Security Act, the Secretary here is similarly empowered to promulgate regulations to administer the Medicare program. 42 U.S.C. § 1395hh. The screening list also serves the identical purpose upheld in *Heckler:* efficiency and uniformity. The two methods indeed are quite similar; both involve an initial denial based on the list/Grid method, followed by a review with opportunity to offer evidence.[9] *See Brown*, 740 F.Supp. at 29–30 (describing process for determining eligibility for disability benefits). A mechanized treatment of claims is avoided since the claimant is given the opportunity to be heard through the review process, which has withstood constitutional muster in *Schweiker*, 456 U.S. at 195–200, 102 S.Ct. at 1669–1672. To require that the Secretary give each initial determination individual attention, no matter how similar a request may be to a previously denied request, is to needlessly overburden the agency. *See Heckler*, 461 U.S. at 468, 103

---

**7.** The Grid reviewed in *Heckler* considered four factors: age, education, work and residual work capacity. *See id.* at 460, 103 S.Ct. at 1953; *see also Sherwin v. Secretary of Health and Human Services*, 685 F.2d 1, 2 (1st Cir.1982), *cert. denied, Picard v. Secretary of Health and Human Services*, 461 U.S. 958, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983).

**8.** The First Circuit in *Brown v. Secretary of Health and Human Services*, 740 F.Supp. 28, 35–36 (D.Mass.1990), held that five steps were required before disability could be denied, based on *Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6–7 (1st Cir.1982). These five steps, however, include the prelimi-

nary determination that the claimant is not automatically disabled, applying a similar list method. If ineligible for automatic disability, two steps are required: (1) an assessment of the abilities of the claimant; and (2) a determination of whether jobs exist. The Grid accomplishes factor number (2). *Heckler*, 461 U.S. at 467, 103 S.Ct. at 1957.

**9.** The Grid process provides review before an administrative law judge, while the list-method at bar provides a carrier fair hearing for amounts exceeding $100 and judicial review for $1000. 42 U.S.C. § 1395ff.

S.Ct. at 1958. Accordingly, the Secretary's motion for partial summary judgment must be granted with regard to the reasonableness of the screening list method.[10]

## III. PRE–1987 APPEALS

In its brief, the class characterizes its claim not as a challenge to the Secretary's authority to determine what is covered and what is not, but rather as a challenge to denials based solely on the screening list, without any opportunity to offer and rebut evidence prior to denial.[11] Indeed, the law of the case establishes that the class questions the methodology itself, rather than individual benefit determinations. *See Griffith v. Bowen,* 678 F.Supp. at 944.[12] At the hearing on the present motions, the class specifically emphasized its challenge to the general inability to question the items placed on the screening list prior to 1987.

The class is quite correct to point out the distinction between appeals before and after 1987, but the argument falls short in its substance. The appeal process did change to allow administrative review of amount determinations in the wake of *Michigan Academy,* 476 U.S. 667, 106 S.Ct. 2133, and the 1987 Omnibus Budget Reconciliation Act, Pub.L. No. 99–509, 100 Stat. 1874 (1986). Before 1987, claimants could only appeal the Secretary's methodology, not the amount awarded or denied. The Supreme Court, in *Michigan Academy,* specifically concluded that Congress meant to eliminate from review only amount determinations—those "quite minor matters"

that would flood the courts. *Id.* at 680, n. 11, 106 S.Ct. at 2141, n. 11. Indeed, the Court suggested that it would be unconstitutional for Congress to eliminate the right to bring constitutional claims concerning executive action. *Id.* at 681, n. 12, 106 S.Ct. at 2141, n. 12.

Here, the class challenge to the items on the screening list falls squarely within the realm of permissible appeal both before and after 1987. A challenge to the screening list methodology constitutes, not an objection to an amount determination, but rather a "substantial statutory and constitutional challenge[ ] to the Secretary's administration of Part B of the Medicare Program." *Id.* at 680, 106 S.Ct. at 2141. The class, therefore, was quite capable, even before the 1987 amendments, of appealing any issues related to the screening methodology.

## CONCLUSION

Based on the Supreme Court's holding in *Heckler v. Campbell,* 461 U.S. at 465–70, 103 S.Ct. at 1956–59, validating the Secretary's authority to issue regulations dealing with classes of issues, the Motion by the Secretary for partial summary judgment is GRANTED regarding the screening list method. Furthermore, the screening list method was capable of review even before the 1987 OBRA amendments. Accordingly, the Secretary's motion for summary judgment regarding the appeal process must likewise be GRANTED, without prejudice to any individual claimants exercising their right to appeal.[13] Since

---

**10.** This entire procedure, including the review determination and appeal process, seems to work favorably for named members of the class. At least one named plaintiff's appeal resulted in reversal (Bianchi) and two others (Nadworny and Griffith) received their benefits. This Court has noted that the latter two payments may have been an effort to moot this case; the Bianchi claim, however, was joined to this action in anticipation of a denial and so has the advantage of having worked its way through the entire process. Quite apart from the earlier settled mootness issue, the appeals process seems to afford the plaintiff class the very opportunity for individualized consideration that it seeks, unfettered by pre–1987 review restrictions.

**11.** Conceptually, this distinction is difficult to make; a challenge to the screening list method impliedly challenges the Secretary's authority to determine what is or is not covered.

**12.** "The gravamen of the plaintiffs' complaint is a challenge to the manner in which the Secretary—specifically, the insurance carriers acting pursuant to the Secretary's regulations—classifies, without particularized determinations, a range of durable medical equipment." *Griffith v. Bowen,* 678 F.Supp. at 944.

**13.** Although summary judgment must enter for the Secretary regarding the screening list method and the appeal process, the individual claimants may still exercise their statutory right to

this Court's earlier opinion, *Griffith v. Bowen*, 678 F.Supp. 942, and the present memorandum and order together dispose of all the issues presented, the case is ripe for judgment. Accordingly, in view of the concerns raised in footnote 13, the action will be remanded to the Secretary for further proceedings as to those individual claimants who exercise their statutory right to judicial review of the specific items on the list.

SO ORDERED.

judicial review of the specific items on the list. The standard of review generally allows reversal of the Secretary if the denial is not based upon substantial evidence, *i.e.* if reasonable minds would not view the evidence as adequate to support a denial. *Roth v. Secretary of Health and Human Services*, 606 F.Supp. 636, 639 (W.D.N.Y.1985); *St. Francis Hosp. Inc. v. Califa-* *no*, 479 F.Supp. 761, 763 (D.D.C.1979). The claimant's overall physical condition and record of the services provided are to be considered in determining whether substantial evidence for a denial exists. *Roth*, 606 F.Supp. at 639. These issues, however, are not before this Court, but may be brought before the appropriate administrative tribunal.