In the Matter of Frank KERTESZ, Petitioner,

v.

CRESCENT HILLS COAL CO., and Old Republic Companies, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 85–3421.

United States Court of Appeals, Third Circuit.

Submitted Under Rule 12(6) March 4, 1986.

Decided April 14, 1986.

As Amended June 5, 1986.

Ada Guyton, U.M.W.A. Dist. 5, Belle Vernon, Pa., for petitioner.

John Eric Jones, Jr., George H. Thompson, Christopher L. Wildfire, Tillman and Thompson, Pittsburgh, Pa., for Crescent Hills Coal Co. and Old Republic Companies.

J. Michael O'Neill, Brian E. Peters, Office of the Solicitor, U.S. Dept. of Labor, Washington, D.C., for Director, Office of Workers' Compensation.

Before GIBBONS, BECKER, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Frank Kertesz petitions for review of a Benefits Review Board (BRB) decision denying him benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–960 (1982) (the Act).[1] The BRB reversed an Administrative Law Judge (ALJ) order granting benefits, holding that the ALJ erred in discrediting a doctor's uncontradicted expert opinion by substituting his own medical judgment. We agree and affirm.

---

1. This court has jurisdiction to review Kertesz's petition under 30 U.S.C. § 932(a) (1982), incorporating 33 U.S.C. § 921(c) (1982).

## I.

Kertesz applied for benefits in 1976, when after two heart attacks he retired from coal mining. At the time he was 54 years old and had worked in the mines approximately 22 years. He had held a wide variety of mining jobs, and had been employed by at least 14 different coal mining companies. He worked steadily as a miner until 1954, but except for a brief stint in 1957, he did not work in mines again until 1973. From 1973 until his retirement in 1976 he worked for Crescent Hills Coal Company (Crescent Coal), which as the responsible operator under 20 C.F.R. § 725.493 (1985), is a respondent in this action. Old Republic Insurance Company is a respondent as Crescent Coal's insurer.

Shortly after Kertesz filed his claim, Dr. Francisco F. Bruno examined him for the United States Department of Labor.[2] Dr. Bruno concluded that x-rays of Kertesz's lungs "could be indicative of very early pneumoconiosis," that the examination showed "[p]robable chronic restrictive and obstructive lung disease," and that he had heart disease. The parties agree that Dr. Bruno's report is inconclusive as to Kertesz's respiratory condition.

Pursuant to statute, 30 U.S.C. § 921 (1982), the Department of Labor has promulgated regulations establishing an interim presumption of total disability. Under the regulations, a person who worked at least 10 years as a coal miner is presumed to be totally disabled by pneumoconiosis and entitled to benefits under the Act if any of four conditions are met: (1) an x-ray reading establishes the condition; (2) ventilatory study measurements establish the presence of a chronic respiratory disease as numerically defined; (3) blood gas studies reveal impairment of the flow of oxygen, again as numerically defined; or (4) the

documented reasoned opinion of a doctor establishes the presence of a total impairment. 20 C.F.R. § 727.203(a) (1985). It is undisputed that Dr. Bruno's reading of the x-rays is sufficient to invoke the interim presumption of disability under 20 C.F.R. § 727.203(a)(1) (1985).[3]

Dr. C. Vaughn Strimlan examined Kertesz on behalf of Crescent Coal in 1979. Board certified in internal medicine, his major area of practice was pulmonary disease and he was the director of pulmonary disease at Mercy Hospital and St. Clair Memorial Hospital, both in Pittsburgh. He was also a federal "A" reader of chest x-rays for pneumoconiosis. He found that Kertesz had a significant cardiovascular history and that, in addition to nitroglycerine tablets, he was taking a number of other medications including a diuretic and another heart pill. He was not taking any pulmonary medicine and his pulmonary function study was essentially within normal limits. In his report and his subsequent deposition, Dr. Strimlan asserted repeatedly that although Kertesz's severe heart problems rendered him totally disabled, respiratory problems attributable to his mine work played no significant role in his disability. He concluded:

> I think the whole man is totally impaired and disabled. I think the primary disability is because of his heart disease.... [T]he pulmonary functions are essentially normal. He doesn't have any significant degree of respiratory impairment. He does have the disease [pneumoconiosis], but I don't think it is really a major factor in contributing to his disability. And that is my best opinion.

■ Dr. Strimlan administered a blood gas test to Kertesz in 1979 and found a reduced $_pO_2$ (plasma concentration of oxy-

---

2. By statute, the United States Secretary of Labor is a party to all actions for benefits under the Act. 30 U.S.C. § 932(k) (1982). The Director, Office of Workers' Compensation Programs, is the Secretary's representative in the present claim. The Director has not participated in the briefing or argument of this appeal.

3. Section 727.203(a)(1) provides: "[a] miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis ... arising out of that employment, if ... (1) a chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis."

gen) with values that qualified Kertesz for the interim presumption of disability under 20 C.F.R. § 727.203(a)(3).[4] Dr. Strimlan concluded that the blood gas test showed "moderately severe arterial hypoxemia." During a hospital stay in 1977, Kertesz registered a higher $pO_2$ on a blood gas test, 69.7 mm. Hg., although the $pCO_2$ (plasma concentration of carbon dioxide) of 32.9 mm. Hg. was similar to the 1979 value. The 1977 blood gas test values are too high to qualify for the interim presumption. They were provided to the ALJ as an unmarked exhibit, without any expert medical interpretation.

At his deposition, Dr. Strimlan stated that he considered blood gas tests unreliable indicators of respiratory condition because the results "can be affected by so many different factors," including "all cardiopulmonary problems—both ventilation in the lungs, profusion in the lungs with blood, circulation of the blood, ... all affected by the heart and medication." In his written report Dr. Strimlan also discredited Kertesz's blood gas test and concluded: "I think the patient's smoking history and the use of Isordil and nitroglycerine tablets probably accounted for his reduction in his $pO_2$."

The Department of Labor, as part of its regulatory scheme of interim presumptions, provides four means of rebuttal. Two of the four are relevant to this case:

(b) Rebuttal of interim presumption. In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:

\* \* \* \* \* \*

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ...; or

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment.

20 C.F.R. § 727.203(b)(2)&(3) (1985). See *infra* note 5. In a previous opinion, the ALJ in 1980 held that Kertesz was disabled and entitled to benefits under the interim presumption as of Dr. Bruno's x-ray reading in 1976, and that Dr. Strimlan's testimony insufficiently rebutted the presumption. The BRB reversed the ALJ's decision on several grounds that are not the subject of the present appeal, and remanded the claim to the ALJ for reconsideration of Dr. Strimlan's evidence as rebuttal of the interim presumption raised by Dr. Bruno's x-ray. *Kertesz v. Crescent Hills Coal Co.*, 3 B.L.R. 1–367 (1981) (*Kertesz I*).

We review here the ALJ's 1982 decision on remand to again award Kertesz benefits, which was in turn reversed by the BRB in 1985. In his decision on remand, the ALJ discredited Dr. Strimlan's conclusion that Kertesz's respiratory problems were not a substantial cause of his disability. The ALJ focused on the drop in $pO_2$ in the blood gas results from 1977 to 1979. He rejected Dr. Strimlan's explanation that Kertesz's lowered $pO_2$ in 1979 was caused by his smoking and the heart medications he was taking, because the record showed Kertesz's exposure to cigarettes and medicine was "substantially the same" at the time each test was administered. The ALJ characterized Dr. Strimlan's opinion for the lowered blood gas values as "tentative,"

---

**4.** The interim presumption of total disability from pneumoconiosis will be invoked for

[a] miner who engaged in coal mine employment for at least 10 years [who registers] ... [b]lood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values which are equal to or less than the values specified in the following table....

20 C.F.R. § 727.203(a)(3) (1985). The column headings for the table of blood gas values that follows apparently have been transposed in error in the Code of Federal Regulations. See 43 Fed.Reg. 36,819, 35,825 (1978); cf. 20 C.F.R. § 718 Appendix C(1) (1985).

Dr. Strimlan found an arterial $pO_2$ of 58 mm. Hg. and an arterial $pCO_2$ of 31 mm. Hg., which qualified for the presumption under the regulation. The interim presumption will be invoked when a $pCO_2$ reading of 31 mm. HG. or below is accompanied by a $pO_2$ reading of 69 mm. HG. or below.

because it "contained no discussion of the details of dosage that would lead to a conclusion supporting differentiation between the circumstances affecting the accuracy of the test results on the earlier and the later occasions."

Upon rejecting Dr. Strimlan's explanation for the lowered blood gas values, the ALJ inferred that the "markedly different blood gas test results ... furnish[] substantial and persuasive evidence of claimant's respiratory impairment," because the 1979 test result qualifies for the interim presumption and "the drop from 1977 fits the Board's view of pneumoconiosis as a 'latent, progressive and insidious disease.'" He concluded:

> The qualifying blood gas test result of Dr. Strimlan furnishes evidence that is not produced by the signs, symptoms and indicia of disability due to the arteriosclerotic heart disease. For this reason it is concluded that the respiratory or pulmonary disease is present in a degree that has totally disabled the miner from the performance of his coal mine work or comparable and gainful employment, when considered independently from the effects of the cardiovascular impairment.

The ALJ therefore awarded benefits to Kertesz, finding that while Crescent Coal had rebutted the interim presumption previously invoked by Dr. Bruno's 1976 x-ray reading, it had not rebutted the presumption of disability arising from Dr. Strimlan's 1979 blood gas test.

The BRB reviewed and reversed the ALJ's decision, finding that "in drawing medical inferences and in setting his own expertise against Dr. Strimlan's, the administrative law judge erred. An administrative law judge's role as fact finder does not extend to independent interpretation of clinical tests." *Kertesz v. Crescent Hills Coal Co.*, 8 B.L.R. 1–112 (1985) (*Kertesz II*). Because the ALJ had recognized that Strimlan's expert opinion if accepted would suffice to rebut the interim presumption, and the BRB found Strimlan's opinion wrongly rejected, it held as a matter of law that Crescent Coal had met the rebuttal burden. *Id.*[5]

Kertesz filed a timely petition for review.

## II.

The findings of fact made by the ALJ are conclusive upon the BRB if they are supported by substantial evidence. The Act incorporates by reference the procedures for review of claims under the Longshore and Harbor Workers' Compensation Act (LHWCA). 30 U.S.C. § 932(a) (1982), *incorporating* 33 U.S.C. § 921(c) (1982). Although the statute does not set forth the standard of review in the court of appeals, case law has established that we review the decisions of the BRB for error of law and to assure ourselves that it has adhered to the statutory scope of review. *Walker v. Universal Terminal & Stevedoring Corp.*, 645 F.2d 170, 172 (3d Cir.

---

5. The BRB throughout these proceedings has relied on section 727.203(b)(2), which allows rebuttal by a showing that "the individual is able to do his usual coal mine work or comparable and gainful work." In previously reversing the ALJ, the BRB stated that under section 727.203(b)(2), "a party can rebut the presumption through evidence proving that the only impairment that can cause compensable disability (i.e., a respiratory or pulmonary impairment) is either non-existent or not totally disabling." *Kertesz I*, 3 B.L.R. at 1–369 to 1–370. In reversing the decision we review here, the BRB has again applied section 727.203(b)(2). *Kertesz II*, 8 B.L.R. at 1–115 & n. 3. Because it is undisputed that Kertesz is totally disabled and unable to do his usual coal mine work or comparable and gainful work, we believe the BRB erred in invoking section 727.203(b)(2).

We believe, to the contrary, that evidence showing the presumed disease does not exist goes to rebuttal under section 727.203(b)(4) ("evidence establishes that the miner does not ... have pneumoconiosis"), and evidence showing some other disease caused the disability goes to rebuttal under section 727.203(b)(3) ("the total disability ... did not arise ... out of coal mine employment"). *See Ramey v. Kentland Elkhorn Corp.*, 755 F.2d 485, 486 n. 3 (6th Cir.1985).

Any dispute over rebuttal labels is of no consequence in light of the conclusion we reach. We agree with the BRB that Dr. Strimlan's report and testimony support Crescent Coal's assertion that Kertesz was totally disabled by heart disease of a sort not covered by the Act, but we invoke section 727.203(b)(3)–(4) for purposes of rebuttal.

1981) (scope of review under LHWCA); *Old Ben Coal Co. v. Prewitt,* 755 F.2d 588, 589–90 (7th Cir.1985) (same standard applies in black lung cases). Thus, to determine whether the BRB has properly adhered to its scope of review, we must independently review the record "and decide whether the ALJ's findings are supported by substantial evidence." *Walker,* 645 F.2d at 172 (citation omitted).

■ Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Because the Black Lung Benefits Act should be liberally construed to assure widespread benefits to miners disabled by black lung disease, "the party opposing an award of benefits must point to persuasive evidence" to rebut an interim presumption of disability. *Pavesi v. Director, Office of Workers' Compensation Programs,* 758 F.2d 956, 964–65 (3d Cir.1985).

■ In reaching a decision, an ALJ should set out and discuss the pertinent medical evidence presented. *See Director, Office of Workers' Compensation Programs v. Rowe,* 710 F.2d 251, 254 (6th Cir.1983). The ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences. *Markus v. Old Ben Coal Co.,* 712 F.2d 322, 326 (7th Cir. 1983). Moreover, the ALJ should reject as insufficiently reasoned any medical opinion that reaches a conclusion contrary to objective clinical evidence without explanation. *Phillips v. Director, Office of Workers' Compensation Programs,* 768 F.2d 982, 984–85 (8th Cir.1985). *See generally Peabody Coal Co. v. Director, Office of Work-*

*ers' Compensation Programs,* 778 F.2d 358, 362–63 (7th Cir.1985).

■ In weighing medical evidence to evaluate the reasoning and credibility of a medical expert, however, the ALJ may not exercise "absolute discretion to credit and discredit the expert's medical evidence." *Id.* at 362. "By independently reviewing and interpreting the laboratory reports the ALJ impermissibly substitute[s] his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence." *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985); *see Gober v. Matthews,* 574 F.2d 772, 777 (3d Cir.1978) (same principle applies in black lung cases). Where the ALJ believes additional medical testimony is needed to explain the clinical evidence, an effort to obtain such information should be made, rather than discrediting medical opinions because of its absence. *See Newman v. Director, Office of Workers' Compensation Programs,* 745 F.2d 1162, 1165 (8th Cir.1984).

■ In the present case, the ALJ erred by rejecting the uncontested medical opinion of Dr. Strimlan that coal related respiratory problems were not a substantial factor in Kertesz's disability. The ALJ relied on inferences he drew from the change in blood gas values between 1977 and 1979. This change was not specifically addressed by Dr. Strimlan, but at his deposition neither Kertesz nor the Director pressed Dr. Strimlan for further support when he attributed Kertesz's qualifying blood gas values in the 1979 test to his continued smoking and his heart medications. Although the ALJ's reasoning in discrediting Dr. Strimlan may not be implausible, in the absence of evidence from some medical expert, the ALJ's inferences amount to nothing more than mere speculation.[6]

---

**6.** Kertesz also argues that Dr. Strimlan's testimony should be discredited as inconsistent with his admission at his deposition that, following American Medical Association (AMA) guidelines, Kertesz was suffering a 10 to 20 percent impairment of his respiratory capacity. The ALJ did not mention this testimony in discrediting Dr. Strimlan, and the doctor indicated that a respiratory impairment of this degree would allow Kertesz to carry on his usual activities and would not be significant. We do not believe that Dr. Strimlan's remarks on the AMA guidelines, read in context, contradict in any significant way his general conclusion that Kertesz was not disabled by coal related respiratory problems.

### III.

We therefore agree with the BRB that the ALJ's decision to grant benefits is unsupported by substantial evidence on the record taken as a whole. Accordingly, Kertesz's petition for review is denied.