875 F.2d 866
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William OLDHAM, Petitioner-Appellant,
v.
PEABODY COAL COMPANY, et al., Respondents-Appellees.
 No. 88-3511.
 United States Court of Appeals, Sixth Circuit.
 June 6, 1989.
 
 Before MILBURN and DAVID A. NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from a denial of benefits under the Black Lung Benefits Act, 30 U.S.C. Secs. 901-960. Because we find that the decision of the Administrative Law Judge that the claimant did not have pneumoconiosis was supported by substantial evidence, we shall affirm the order appealed from.
 
 
 2
 * The claimant, William Oldham, was born on March 3, 1921. He has an eighth-grade education. From 1939 to 1942 he worked in coal mines as a general laborer; from January, 1956 to July, 1983, he worked as a mechanic and welder for the Peabody Coal Company. He retired in July, 1983, allegedly due to shortness of breath which adversely affected his ability to perform his job.
 
 
 3
 Mr. Oldham first filed a claim under the Act on November 27, 1973. This claim was denied by the Department of Labor on June 20, 1975, based on the claimant's failure to pursue it. Mr. Oldham submitted additional evidence and refiled the claim, following the 1977 amendments to the Act, but the claim was again denied on May 24, 1979. Mr. Oldham was informed in that denial that he had one year from the date of the denial to request reconsideration; he did not do so, allegedly on the advice of counsel.
 
 
 4
 On August 5, 1983, Mr. Oldham submitted another claim, this time under the 1982 version of the Act. This claim was denied by the Department of Labor on December 20, 1983. A hearing at which Mr. Oldham was represented by counsel was held before an Administrative Law Judge. The ALJ took testimony from Mr. Oldham and considered a number of medical reports and the depositions of many of the physicians and radiologists by whom the reports had been prepared.
 
 
 5
 Dr. Emery Lane examined Mr. Oldham on July 5, 1983, when Mr. Oldham was still working. His diagnosis was probable arteriosclerotic heart disease with angina pectoris. In his subsequent deposition, Dr. Lane, a specialist in pulmonary medicine, testified that he saw no abnormalities on his physical examination of Mr. Oldham that could be traceable to a pulmonary condition. Dr. Lane interpreted a chest X-ray taken on the date of the examination as negative for pneumoconiosis. Dr. Lane was neither a Board-certified radiologist nor a B-reader.
 
 
 6
 Dr. Anderson, a Board-certified specialist in pulmonary disease who also had experience in cardiology, examined Mr. Oldham on July 5, 1983, Dr. Anderson found "probable arteriosclerotic heart disease with angina," but "no evidence of pneumoconiosis." Pulmonary function tests that Mr. Oldham performed for Dr. Anderson resulted in an MVV value 74% of the predicted value. Dr. Anderson commented that Mr. Oldham "was not maximally cooperative," but the doctor concluded that Mr. Oldham did not have "significant ventilatory impairment." X-rays taken at this time were interpreted as showing no sign of pneumoconiosis.
 
 
 7
 At his deposition, Dr. Anderson opined that Mr. Oldham's subjective complaints of shortness of breath and coughing were attributable to his arteriosclerotic heart disease, which was not related to his employment in the coal mining industry. Dr. Anderson reviewed the arterial blood gas studies performed by Drs. Gallo, Simpao, Powell and O'Neill, and concluded from them that Mr. Oldham did not have a permanent pulmonary impairment.
 
 
 8
 Dr. Valentino Simpao examined Mr. Oldham at the request of the Department of Labor on October 3, 1983, and made a diagnosis of pneumoconiosis related to dust exposure from coal mine employment. Dr. Simpao was deposed on May 14, 1985, and testified that an X-ray that he had taken of Mr. Oldham fell into the category of 1/1, signifying the presence of pneumoconiosis. He admitted, however, that an arterial blood gas study which he performed was "within normal range." Dr. Simpao was not Board-certified in any specialty.
 
 
 9
 Dr. Thomas Gallo of the Trover Clinic in Madisonville, Kentucky, examined Oldham on November 8, 1983. He wrote that while a chest film demonstrated cardiomegaly, "[ ]he lung fields are otherwise clear." An arterial blood gas test produced results that Dr. Gallo described as "normal." Dr. Gallo's impression was that Mr. Oldham did not have coal worker's pneumoconiosis.
 
 
 10
 Dr. Gallo, a Board-certified specialist in internal medicine and pulmonary disease, testified at his deposition that although pulmonary function studies were performed at his examination of Mr. Oldham, those studies were not reliable because "maximum effort was not given." He testified that the arterial blood gas studies were within normal limits. He testified that he read an X-ray of Mr. Oldham as showing an enlarged heart, but that this condition was due to cardiovascular problems exacerbated by diabetes.
 
 
 11
 Dr. Robert Powell, a specialist in Pulmonary Disease who is also an instructor in Pulmonary and Environmental Medicine at the University of Louisville School of Medicine, examined the claimant on March 8, 1984, and summarized his findings in a two-page letter to the Department of Labor. His final impression was: "1. No evidence of pneumoconiosis or silicosis. 2. Questionable cavitary lesion in the base of the right lung." The letter reported that an X-ray taken on the day of the examination was negative for pneumoconiosis. Pulmonary function studies of Mr. Oldham produced results that were 87%, 83% and 29% of the predicted values. With regard to the latter result, Dr. Powell explained in his deposition that he did not believe that Mr. Oldham applied his maximum effort to the test.
 
 
 12
 Dr. Richard O'Neill, a specialist in internal medicine and pulmonary diseases, examined Mr. Oldham on June 4, 1984, and diagnosed him as having "chronic bronchitis by history," but no pneumoconiosis. He based this impression on an X-ray dated June 4, 1984, which he put in the category of 0/0. He found an arterial blood gas study to be within normal limits, but commented on a pulmonary function study that "spirometry was invalid due to inadequate effort." At his deposition, Dr. O'Neill explained that he based his inference of inadequate effort by Mr. Oldham on the tests on the wide variance in results of the FVC and FEV1 curves. He concluded that Mr. Oldham retained the capacity to perform his usual coal mine work.
 
 
 13
 On September 24, 1984, Mr. Oldham was examined by Dr. William West, a general practitioner from Newburgh, Indiana, who reported his findings in a subsequent letter to Mr. Oldham's attorney, Dick Adams. On physical examination, Dr. West found "a marked increase in the anterior posterior diameter of the chest." He noted "moderately severe linear fibrotic changes" in a chest x-ray taken on October 3, 1983, along with "multiple nodular densities with some near the central lung zones of about 1 cm." He concluded that "[w]hen coupled with the work history, this X-ray is compatible with a diagnosis of coal workers' pneumoconiosis."
 
 
 14
 Dr. Sam Traughber examined Mr. Oldham on September 27, 1984, and reported that pulmonary function tests showed "findings compatible with primarily restrictive ventilatory deficit which is moderately severe." A FVC test produced a result of 83% of predicted values, a FEV1 test produced a result of 76%, and an MVV test produced a result of 37%; the intra-test variance was below 4%. Dr. Traughber read a chest X-ray of Mr. Oldham as showing "findings compatible with category 1/0 pneumoconiosis and cardiomegaly." His diagnosis was "Coal workers' and welders' pneumoconiosis chest X-ray category 1/0" and "[p]ossible cardiomegaly and mild congestive failure due to ASCVD [arteriosclerotic cardiovascular disease]." He added, "I do not feel this man is able to perform sustained manual labor on 8-hour basis and is capable of performing only light labor."
 
 
 15
 Dr. Traughber was deposed on October 24, 1984. On cross-examination, it was brought out that the X-ray he examined was originally read for him by Dr. Payne, a Board-certified radiologist and licensed B-reader with Pennyrile Radiology, who interpreted the X-ray as falling in the 0/0 category.
 
 
 16
 In addition to the doctors who examined Mr. Oldham directly, several doctors who examined the medical records were deposed. Dr. Brandon, a Board-certified radiologist and licensed B-reader, testified in a deposition that an X-ray of Mr. Oldham (which the ALJ assumed to be from July 5, 1983) fell into category 1/1, indicating pneumoconiosis. Dr. Brandon added that it would be a "reasonable assumption" that Mr. Oldham's medical condition was a result of his coal mine exposure.
 
 
 17
 Dr. Marshall, who was also a Board-certified radiologist and B-reader, likewise testified in a deposition that the July 5, 1983, X-ray indicated pneumoconiosis, of category 1/2.
 
 
 18
 Dr. B. Glenn Hicks, another Board-certified radiologist and B-reader, testified that the October 3, 1983, X-ray of Mr. Oldham demonstrated pneumoconiosis, category 1/1. He added that he would attribute the anomalies in Mr. Oldham's X-ray readings to his long exposure to coal dust.
 
 
 19
 Dr. Henry Pendergrass, a Board-certified radiologist and licensed B-reader, testified in a deposition that an X-ray of Mr. Oldham dated November 8, 1983, showed no evidence of coal miners' pneumoconiosis.
 
 
 20
 Mr. Oldham testified at a deposition that he had last worked on July 30, 1983, when it became necessary for him to quit because of his shortness of breath. That condition, he testified, first appeared two years earlier. He also stated that he had been a non-smoker all his life; that he had always given his best effort on pulmonary function tests; and that he had never been told a test was invalid because of insufficient effort.
 
 
 21
 Mr. Oldham testified at the hearing before the ALJ that even walking up a couple of flights of steps brought on shortness of breath. He gave an extensive description of the work he did for the Peabody Coal Company, which involved a lot of heavy lifting and a lot of exposure to coal dust. He testified at one point that pneumoconiosis was the only disease he had, though he admitted later that he was also a borderline diabetic.
 
 
 22
 The ALJ issued a Decision and Order on September 10, 1986, denying Mr. Oldham's claim for benefits. At the outset, the ALJ rejected the argument that Mr. Oldham was entitled to the presumption of disability under 20 C.F.R. Sec. 718.305(a). That provision did not apply, according to the ALJ, because the claim was filed after January 1, 1982. Mr. Oldham's previous claim filed in 1973 did not count, because that had been denied in 1979 and the denial was not appealed within the statutory time limits.
 
 
 23
 With regard to the 1983 claim, the ALJ determined that, on balance, the X-ray evidence did not support a finding of pneumoconiosis. And even if Mr. Oldham had pneumoconiosis, the ALJ wrote, the evidence showed that he was not totally disabled due to his pneumoconiosis.
 
 
 24
 The ALJ weighed the opinions of Drs. Simpao, West, and Traughber, who found based on pulmonary studies that Mr. Oldham did have pneumoconiosis, and the opinions of Drs. Anderson, Gallo and Powell, who thought that Mr. Oldham did not have pneumoconiosis; and he concluded--in part because Drs. Simpao and West were not Board-certified pulmonary specialists, while Drs. Anderson, Gallo and Powell all were--that the doctors who found that Mr. Oldham was not disabled were more credible, on balance. The ALJ also suggested that Mr. Oldham's breathing problems might be due to diabetic cardiomyopathy.
 
 
 25
 Mr. Oldham appealed to the Benefits Review Board, which affirmed the decision of the ALJ on the grounds that Mr. Oldham could not identify any specific error in the ALJ's findings. The present pro se appeal followed.
 
 II
 
 26
 In order to receive benefits under 20 C.F.R. Part 718, a coal miner must meet three conditions:
 
 
 27
 (a) the miner must have pneumoconiosis;
 
 
 28
 (b) the miner must prove that he contracted the disease through his coal mine employment;
 
 
 29
 (c) the miner must prove that he is totally disabled due to his pneumoconiosis.
 
 
 30
 Cf. Director, OWCP v. Mangifest, 826 F.2d 1318, 1320 (3d Cir.1987). The duty of an appeals court in reviewing a decision under the Black Lung Benefits Act is to determine, after an independent review of the record, "whether the ALJ's findings are supported by substantial evidence." Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 163 (3d Cir.1986).
 
 
 31
 Under 20 C.F.R. Sec. 718.202, a finding of pneumoconiosis may be based on X-ray reports (Sec. 718.202(a)(1)) or "objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories" (Sec. 718.202(a)(4)). In the present case, the X-ray evidence was in conflict. There were several X-ray readings; some readings indicated the presence of pneumoconiosis, while others did not. On the one hand, there was a July 5, 1983, film which was read as negative by Dr. Anderson and Dr. Lane but was read positive by Dr. Marshall, a Board-certified radiologist and B-reader. On the other hand, an October 3, 1983, film was read as negative by Dr. Cole, a Board-certified radiologist and B-reader (although Dr. Hicks, a Board-eligible radiologist, read it as positive); a November 3, 1983, film was read as negative by Dr. Pendergrass, also a Board-certified radiologist and B-reader; a March 8, 1984, film was read as negative by Dr. Powell; a June 4, 1984, film was read as negative by Dr. O'Neill; and a September 27, 1984, film was read as negative by Dr. Payne, a Board-certified radiologist and B-reader. It is true that the September 27, 1984, film was read as positive by Dr. Traughber, but he was not a radiologist. Over all, we find that there was substantial evidence to support the ALJ's decision that the X-ray evidence did not support a finding of pneumoconiosis.
 
 
 32
 Nor can we say that the objective medical evidence, as defined by 20 CFR Sec. 718.202(a)(4), did not substantially support the ALJ's finding that Mr. Oldham did not suffer from pneumoconiosis. In evaluating the pulmonary function studies, arterial blood gas studies, and physical examinations in this case, the ALJ had to weigh the credentials and the findings of the three doctors who found Mr. Oldham to be suffering from pneumoconiosis--Drs. Simpao, West, and Traughber--against those of the doctors relied on by the defendant coal company. The ALJ noted that Drs. Simpao and West were general practitioners, which reduced their comparative credibility somewhat. And with regard to Dr. Traughber, it should be noted that two of his test results, an FEV1 value that was 76% of predicted and an FVC value that was 83% of predicted, were at or near the normal range. The third test value--an MVV of 37% of predicted--was far outside the normal range, but as noted by Dr. Anderson, the MVV is the most "effort-dependent" part of the test. The MVV value could have been affected by poor effort, a circumstance remarked upon by other doctors. It is also interesting, in this regard, that Dr. Anderson testified that similar MVV results of 23%-48% of predicted were "physiologically impossible." Unlike Dr. Traughber, who was apparently a cardiology specialist, Dr. Anderson was a pulmonary disease specialist.
 
 
 33
 Other pulmonary disease specialists, including Dr. Lane, Dr. Powell, Dr. Gallo, and Dr. O'Neill, all were of the opinion that pulmonary function studies and arterial blood gas tests dictated a finding that Mr. Oldham did not suffer from pneumoconiosis. The total weight of their testimony is such, we believe, that it cannot be said that there was no substantial evidence to support the ALJ's conclusion that the ventilatory studies did not establish pneumoconiosis, and did not establish that the claimant was totally disabled due to pneumoconiosis.
 
 
 34
 AFFIRMED.