898 F.2d 1478
 Leroy ROBBINS, Petitioner,
v.
JIM WALTER RESOURCES, INC., Respondent,
and
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Party-in-Interest.
 No. 88-7761.
 United States Court of Appeals,
Eleventh Circuit.
 April 4, 1990.
 
 Patricia Guthrie Fraley, Cooper, Mitch, Crawford Kuykendall & Whatley, Birmingham, Ala., for petitioner.
 Linda M. Meekins, Clerk, Benefits Review Bd., U.S. Dept. of Labor, Washington, D.C., Braxton Schell, Jr., Bradley, Arant, Rose & White, Birmingham, Ala., for respondent.
 Rita Roppolo, Sylvia T. Kaser, U.S. Dept. of Labor, Sol., Washington, D.C., for Director, OWCP.
 Petition for Review of an Order of the Department of Labor Benefits Review Board.
 Before TJOFLAT, Chief Judge, CLARK, Circuit Judge, and SMITH*, Senior Circuit Judge.
 CLARK, Circuit Judge:
 
 
 1
 On May 14, 1979, petitioner Leroy Robbins applied for benefits under the Black Lung Benefits Act, 30 U.S.C. Secs. 901-945 (1982 & Supp. IV 1986) (the "Act"), and the regulations promulgated thereunder, 20 C.F.R. Secs. 410, 718, 725, 727 (1988). The Deputy Commissioner of the Department of Labor initially found that Mr. Robbins was entitled to benefits. Respondent Jim Walter Resources, Inc. (JWR), the Responsible Operator under the Act, contested this finding and the claim was set for a hearing before Administrative Law Judge (ALJ) Matera. On September 26, 1983, ALJ Matera issued an order awarding benefits. On appeal by JWR, the Benefits Review Board (the "Board") remanded the claim for further consideration. On remand, ALJ Matera issued an order reaffirming his prior award of benefits. JWR appealed and the Board vacated ALJ Matera's award of benefits and found Mr. Robbins not entitled to benefits. The Board affirmed its decision upon Mr. Robbins's Motion for Reconsideration, and Mr. Robbins appealed to this Court pursuant to 30 U.S.C. Sec. 932(a) and 33 U.S.C. Sec. 921(c).
 
 BACKGROUND
 
 2
 Leroy Robbins worked in or around coal mines for over 35 years, and was working as a coal cutting machine operator for JWR when he retired in 1979.
 
 
 3
 The relevant medical evidence in the record consists of five x-ray interpretations of two x-rays. These x-rays are dated October 4, 1979 and August 5, 1980. The October 4, 1979 x-ray was read as positive for simple pneumoconiosis by a Board Certified Radiologist, and a "B" reader[1] who is also a Board Certified Radiologist. The August 5, 1980 x-ray was also read as positive for simple pneumoconiosis by a "B" reader who is also a Board Certified Radiologist and by a Dr. Russakoff, a "B" reader. One physician, a "B" reader, interpreted the August 5, 1980 x-ray as negative for pneumoconiosis.
 
 
 4
 A pulmonary function study administered to Mr. Robbins by a Dr. Hamilton on October 4, 1979 produced values on two variables that were 77% and 55% of the predicted normal values for a man of Mr. Robbins's age and size. An arterial blood gas study performed on the same day produced values that do not qualify as totally disabling under the pertinent regulations. Dr. Hamilton testified that these pulmonary tests were indicative of coronary artery disease.
 
 
 5
 On August 5, 1980, Dr. Russakoff administered an EKG, pulmonary function study and arterial blood gas study to Mr. Robbins. Dr. Russakoff interpreted the arterial blood gas study results as normal. The pulmonary function test produced values on two variables that were 80% and 75% of the predicted normal values for a man of Mr. Robbins's age and size. Based on all the test results, Dr. Russakoff testified that Mr. Robbins had severe heart disease that was probably arteriosclerotic in nature with cardiomeglia and chronic congestive heart failure, signs of a previous stroke, and that his x-rays showed possible pneumoconiosis, although distinguishing between pneumoconiosis and a condition caused by his congestive heart failure was impossible.
 
 
 6
 Two other doctors who examined Mr. Robbins in 1979 and 1980 reported that he had unstable angina, a history of left bundle branch block, cardiomyopathy and coronary artery disease.
 
 
 7
 The main controversy in this case centers around the conclusions drawn by Drs. Hamilton and Russakoff regarding Mr. Robbins's medical condition and the cause of his apparent inability to return to work as a coal cutting machine operator. Dr. Hamilton testified that most of Mr. Robbins's disability is due to his coronary artery disease. Dr. Hamilton further testified that Mr. Robbins's condition was related to dust exposure from his coal mine employment and that it was likely that Mr. Robbins's condition would prevent him from going back to work. Although Dr. Russakoff did not testify directly to the issue of whether Mr. Robbins was medically able to return to work, he did testify that any occupational disability suffered by Mr. Robbins was due to his heart condition. Both doctors testified to the effect that they felt that if the pneumoconiosis indicated in the x-rays were Mr. Robbins's only medical problem, he should be able to perform his job. This testimony indicates that they did not find Mr. Robbins to be suffering from a totally disabling respiratory impairment. Both doctors also testified that they did not believe pneumoconiosis to be a totally disabling disease.
 
 ANALYSIS
 
 8
 In reviewing the Board's decision, our role is to ensure that the decision complies with the law and is supported by substantial evidence. Martin v. Alabama By-Products Corp., 864 F.2d 1555, 1557 (11th Cir.1989); Stomps v. Director, Office of Workers' Compensation Programs, 816 F.2d 1533, 1534 (11th Cir.1987).
 
 I.
 
 9
 The purpose of the Black Lung Benefits Act is to "provide benefits ... to coal miners who are totally disabled due to pneumoconiosis...." 30 U.S.C. Sec. 901(a) (1982). Under the Act, a miner is considered totally disabled when "pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine ... in which he or she was previously engaged with some regularity and over a substantial period of time." 30 U.S.C. Sec. 902(f)(1)(A) (1982).
 
 
 10
 Under the procedures set out for establishing a claim to benefits, a claimant who engaged in coal mine employment for at least ten years is entitled to a presumption of total disability due to pneumoconiosis if he or she meets one of the requirements of 20 C.F.R. Sec. 727.203(a). On remand of the claim, ALJ Matera again found that the x-ray readings met with the requirements of Sec. 727.203(a)(1) and that Mr. Robbins was therefore entitled to a presumption of total disability due to pneumoconiosis.[2] On appeal the Board affirmed this decision, and JWR does not challenge this finding in this Court. At this point, the burden shifts to JWR to rebut the presumption by meeting one of the tests set forth in section 727.203(b). If JWR rebuts the presumption, the burden shifts back to Mr. Robbins to prove that he is totally disabled and that his disability results from pneumoconiosis.
 
 
 11
 The only two tests relevant to this case are those set forth in 20 C.F.R. Secs. 727.203(b)(2) and 727.203(b)(3)[3] (hereinafter "subsection (b)(2)" and "subsection (b)(3)," respectively), and the disagreement between the Board and ALJ Matera concerns only subsection (b)(2). In his first order awarding benefits to Mr. Robbins, ALJ Matera summarized the facts and stated that normally they would be sufficient to rebut the presumption under both subsections (b)(2) and (b)(3). He decided, however, that because the only two doctors who testified regarding Mr. Robbins's ability to return to work both maintained beliefs that conflicted with the premises of the Act, their testimony could not be given credence in establishing rebuttal under either subsection (b)(2) or (b)(3). Specifically, because the doctors' belief that pneumoconiosis is not a totally disabling disease directly conflicts with the purpose of the Act to provide benefits for miners who are totally disabled due to pneumoconiosis, their testimony that Mr. Robbins's pneumoconiosis did not render him unable to work should not be given credence. He then noted that no other rebuttal evidence established rebuttal under either subsection, and thus Mr. Robbins was entitled to receive benefits.
 
 
 12
 To rebut the presumption of total disability due to pneumoconiosis under subsection (b)(2), the employer must prove in light of all relevant evidence that the claimant is able to do his usual coal mine work, or comparable and gainful work. 20 C.F.R. Sec. 727.203(b)(2) (1988). Doctors Hamilton and Russakoff testified that, absent Mr. Robbins's heart disease, his pneumoconiosis would not prevent him from returning to work. ALJ Matera discounted this testimony because of the doctors' professed belief that simple pneumoconiosis is never totally disabling. The Board found that ALJ Matera improperly discounted the doctors' testimony because the cause of a disability is not relevant to rebuttal under subsection (b)(2). After ALJ Matera again discounted the doctors' testimony on remand, the Board vacated the original award of benefits, thus implicitly finding that the evidence was sufficient to establish rebuttal under subsection (b)(2).
 
 
 13
 The Board is clearly correct in holding that the cause of a disability is irrelevant to rebuttal under subsection (b)(2). Martin, 864 F.2d at 1557 (Subsection (b)(2) rebuttal is not established by proof that a condition other than pneumoconiosis is a cause of the claimant's total disability.). The focus of subsection (b)(2) rebuttal is on proof that the claimant is able to do his usual, or comparable, work. In vacating the ALJ's award of benefits, the Board cites its holding in Stephens v. Bethlehem Mines Corp., 8 Black Lung Rep. (MB) 1-350 (1985), in which the Board held that physicians who believe that simple pneumoconiosis is never disabling can make valid assessments as to the existence and extent of respiratory impairment or work capability. The Board concluded, therefore, that for purposes of evaluating rebuttal under (b)(2), ALJ Matera could not discount the doctors' testimony regarding work capability and the existence of respiratory impairment.
 
 
 14
 This ruling by the Board, although technically correct, is not applicable to this case. The discounted testimony was not testimony regarding Mr. Robbins's ability to work, the only relevant inquiry under subsection (b)(2). Instead, the doctors testified that, in the hypothetical situation that Mr. Robbins had only the pneumoconiosis indicated in his x-rays and no other diseases, he would be able to return to work. As ALJ Matera noted, because the doctors believe that simple pneumoconiosis is never totally disabling, they would necessarily testify that Mr. Robbins could return to work if his only disease was the simple pneumoconiosis indicated on his x-rays. Because the doctors' beliefs conflict with the philosophical underpinnings of the Black Lung Benefits Act that pneumoconiosis is a totally disabling disease for which disability benefits should be provided, such testimony can properly be discounted. Prior Board decisions and several circuit court opinions support ALJ Matera's decision to discount the validity of this testimony in light of the doctors' belief that simple pneumoconiosis is never disabling. Hoffman v. B & G Construction Co., 8 Black Lung Rep. (MB) 1-65 (1985); Stephens v. Bethlehem Mines Corp., 8 Black Lung Rep. (MB) 1-350 (1985); Black Diamond Coal Mining Co. v. Benefits Review Board, 758 F.2d 1532, 1534 (11th Cir.1985); Penn Allegheny Coal Co. v. Mercatell, 878 F.2d 106, 109-10 (3d Cir.1989).[4]
 
 
 15
 However, under Stephens, ALJ Matera could not properly discount the testimony of the doctors regarding the existence of respiratory impairment on the basis of their beliefs which are in conflict with the Act. 8 Black Lung Rep. (MB) at 1-350. JWR argues that the doctors' testimony establishes that Mr. Robbins has no respiratory impairment, and therefore it has proved rebuttal under subsection (b)(2), because the Black Lung Benefits Act is meant to provide benefits to persons who contract pneumoconiosis, which causes respiratory impairment. Because the evidence shows that Mr. Robbins doesn't have any respiratory impairment from any cause, JWR asserts that it has rebutted the presumption under subsection (b)(2).
 
 
 16
 Proof of the absence of respiratory impairment, however, is not sufficient to establish rebuttal under subsection (b)(2). York v. Benefits Review Board, 819 F.2d 134, 137 (6th Cir.1987) (Under subsection (b)(2), a showing that the miner was not totally disabled by a respiratory impairment does not prove that the miner is able to do his usual coal mine work.). As we noted in Martin, 864 F.2d at 1557, proof that a claimant is unable to work for reasons other than pneumoconiosis is not relevant under subsection (b)(2) and should only be considered in establishing rebuttal under subsection (b)(3). Even if ALJ Matera improperly ignored the proof that Mr. Robbins does not suffer from any respiratory impairment, such evidence does not establish that Mr. Robbins is able to return to work. In vacating the ALJ's reaffirmance of his initial award of benefits and finding Mr. Robbins not entitled to benefits under the Act, the Board necessarily found that the doctors' testimony that Mr. Robbins suffered no respiratory impairment was sufficient to show that Mr. Robbins could return to work, thus rebutting the presumption under subsection (b)(2).
 
 
 17
 Since no evidence suggesting that Mr. Robbins is able to return to work exists on the record, we must reverse. Neither doctor testified that in his current condition Mr. Robbins is able to work. In fact, Dr. Hamilton stated that it was likely that Mr. Robbins would not be able to return to work. Mr. Robbins and his wife testified to his inability to perform household chores such as cutting the lawn, and to his difficulty in breathing at night. JWR has not suggested that other evidence in the record aside from the testimony that Mr. Robbins suffers no respiratory impairment supports a finding that Mr. Robbins is able to return to work. Because the record lacks evidence suggesting that Mr. Robbins is able to work, and contains significant evidence suggesting that he is unable to work, the record lacks substantial evidence supporting a finding of rebuttal under subsection (b)(2). Therefore, we need not remand this issue, and instead find that the Board erred in holding JWR has established rebuttal under subsection (b)(2). Martin, 864 F.2d at 1557 (Board decisions must be in accordance with the law and be supported by substantial evidence.).
 
 II.
 
 18
 JWR also argues on appeal that even if it has not established rebuttal under subsection (b)(2), the evidence does establish rebuttal under subsection (b)(3), and therefore, regardless of the "label" attached to the rebuttal evidence, the presumption that Mr. Robbins is totally disabled due to pneumoconiosis has been rebutted. In support of this proposition JWR cites Kertesz v. Crescent Hills Coal Co., 788 F.2d 158 (3d Cir.1986). In Kertesz, the ALJ had made an independent medical analysis of lab reports, thus improperly substituting his own medical judgment for credible opinions of the expert witnesses that were supported by competent evidence. Because the ALJ sits as a trier of fact, not as an additional expert witness, this action by an ALJ would be improper under any of the rebuttal sections. Therefore, although the court disagreed with the Board's application of subsection (b)(2) to the case, it found that when the improperly rejected medical opinions were considered, rebuttal was met under subsection (b)(3). Id. The current case presents this court with a different situation. The Board's ruling was that ALJ Matera's rejection of the doctors' testimony was only improper under subsection (b)(2). Therefore, we are not, as the court was in Kertesz, automatically presented with a need to reevaluate the evidence as it pertains to subsection (b)(3).
 
 
 19
 Although JWR did present an argument challenging ALJ Matera's finding under subsection (b)(3) to the Board on its first appeal, the Board did not address that argument in its opinion remanding the case to ALJ Matera. The Board's order remanding the case required the ALJ to reconsider only whether the evidence was sufficient to invoke a presumption of total disability under subsection (a)(1) and whether rebuttal had been established under subsection (b)(2). Therefore, the Board's order implicitly affirmed the ALJ's finding that rebuttal was not established under subsection (b)(3).
 
 
 20
 An ALJ may properly reject the opinions of doctors whose beliefs are in conflict with the Act when determining whether rebuttal is met under subsection (b)(3). Black Diamond Coal Mining Co. v. Benefits Review Board, 758 F.2d 1532, 1534 (11th Cir.1985) (Doctor's belief that simple pneumoconiosis is not disabling conflicts with the underlying premises of the Act, and his testimony regarding the cause of claimant's disability may therefore be discredited when assessing the establishment of rebuttal under subsection (b)(3).); Penn Allegheny Coal Co. v. Mercatell, 878 F.2d 106, 109-10 (3d Cir.1989) (When doctor believes that simple pneumoconiosis is not disabling, ALJ may discount his testimony that miner's death was attributable to lung cancer caused by cigarette smoking, not pneumoconiosis from coal mine employment, when assessing establishment of rebuttal under subsection (b)(3).); Stephens v. Bethlehem Mines Corp., 8 Black Lung Rep. (MB) 1-350 (1985) (Opinions of doctors with beliefs inconsistent with the Act may be rejected when the ALJ determines that such belief forms a primary basis for the doctor's conclusion that the miner's pneumoconiosis is not totally disabling.)
 
 
 21
 JWR argues that subsection (b)(3) rebuttal was met because the doctors testified that Mr. Robbins suffers from no pulmonary or respiratory impairment, and therefore his disability must be due to other causes unrelated to his coal mine employment. This argument ignores the fact that even when an employer can prove that a miner's disability is due to something other than pneumoconiosis, the employer must also show that the other disease did not arise out of the miner's coal mine employment. 20 C.F.R. Sec. 727.203(b)(3); Penn Allegheny Coal Co., 878 F.2d at 108 n. 3, citing Rose v. Clinchfield Coal Co., 614 F.2d 936, 939 (4th Cir.1980). Furthermore, this argument ignores the fact that Mr. Robbins is presumed to be totally disabled due to the pneumoconiosis as shown on his x-rays. The doctors both testified that any disability suffered by Mr. Robbins was due to his heart disease, not his pneumoconiosis. Under the circumstances of this case, the ALJ was entitled to reject these opinions. As ALJ Matera noted, if a doctor believes that simple pneumoconiosis is not disabling, then the doctor will necessarily attribute the disability of someone with diseases other than simple pneumoconiosis to the other diseases. In light of the purposes and philosophical underpinnings of the Act, such testimony may be discredited by the ALJ.
 
 CONCLUSION
 
 22
 Because the Board improperly held that proof of the absence of respiratory impairment was sufficient to establish rebuttal under subsection (b)(2), and the record does not contain other substantial evidence in support of rebuttal under (b)(2), we REVERSE the Board's finding that JWR established rebuttal under subsection (b)(2). Finding no basis upon which to reverse the Board's implicit affirmance of the ALJ's finding that JWR did not establish rebuttal under subsection (b)(3), we hereby order that the initial award of benefits by ALJ Matera be reinstated.
 
 
 23
 REVERSED.
 
 
 
 *
 Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 A "B" reader is a physician who has demonstrated proficiency in assessing and classifying x-ray evidence of pneumoconiosis by successful completion of an examination conducted by or on behalf of the Department of Health and Human Services
 
 
 [2]
 20 C.F.R. Sec. 727.203(a)(1) provides:
 (a) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:
 (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis ... ;
 
 
 [3]
 20 C.F.R. Secs. 727.203(b)(2) and 727.203(b)(3) provide:
 (b) Rebuttal of interim presumption. In adjudicating a claim under this subpart, all relevant medical evidence shall be considered.
 The presumption in paragraph (a) of this section shall be rebutted if:
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ...; or
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment;
 
 
 [4]
 Some confusion in this case stems from the fact that these rulings on the propriety of discounting doctor's opinions regarding the cause of a disability have involved challenges to the rebuttal of the presumption under subsection (b)(3). To prove rebuttal under subsection (b)(3), the employer must show that the total disability of the claimant did not arise in whole or in part out of coal mine employment. 20 C.F.R. Sec. 727.203(b)(3) (1988). Testimony regarding the medical cause of a claimant's disability is therefore relevant to a determination under subsection (b)(3), because if the medical cause of a disability is due only to, for example, lung cancer caused by cigarette smoking, then the presumption of total disability due to pneumoconiosis is rebutted