STATE OF NEW YORK, on Behalf of
Margaret BODNAR, Appellee,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES, Appellant.

No. 790, Docket 89–6217.

United States Court of Appeals,
Second Circuit.

Argued Feb. 1, 1990.

Decided May 8, 1990.

Mark W. Pennak, Atty., Appellate Staff Civ. Div., Dept. of Justice, Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., Frederick J. Scullin, Jr., U.S. Atty., and Anthony J. Steinmeyer, Attorney, Appellate Staff Civ. Div., Department of Justice, of counsel), for appellant.

Peter G. Crary, Asst. Atty. Gen. (Robert Abrams, Atty. Gen. of the State of N.Y., Peter H. Schiff, Deputy Sol. Gen., and Lenore B. Browne, Asst. Atty. Gen., of counsel), for appellee.

Before OAKES, Chief Judge,
KEARSE, Circuit Judge, and
FLETCHER, Circuit Judge.*

OAKES, Chief Judge:

Margaret Bodnar was seventy-seven years old when she was brought by ambulance and carried in by stretcher to the Helen Hayes Hospital in West Haverstraw, New York, on August 6, 1982. Having left the hospital only two weeks earlier, after recuperation from surgery and from an infection to her left hip, Bodnar was suffering from a painful and swollen left knee. She could no longer walk except in pain.

The Secretary of Health and Human Services decided that Bodnar had not been in need of hospitalization on August 6, 1982, and, on this basis, denied the hospital's later claim for Medicare reimbursement. By an order dated August 1, 1989, the United States District Court for the Northern District of New York, Con. G. Cholakis, Judge, reversed the Secretary's determination. The Secretary now appeals. We affirm.

## FACTS

Bodnar initially entered the Helen Hayes Hospital to have part of her left hip removed on June 10, 1982. This surgery was followed by six weeks of hospitalization during which she received intravenous antibiotics to treat an infection in the same hip. When Bodnar left the hospital on July 22, 1982, she was able to walk with the assistance of a cane and without pain. She returned to her apartment where she lived alone. Just five days later, she awoke one morning to find her knee tender, painful, and swollen. The pain persisted for the next week. Finally, on August 6, 1982, she was brought by ambulance to the hospital.

The admitting doctor examined Bodnar and wrote:

> Examination of the left knee shows no swelling with point tenderness over the medial tibial plateau. There is no ligamentous instability medial or lateral. There is no anterior cruciate instability.

Range of motion of the knee, there is 110 [degrees] of flexion on the left knee which is painful at extreme.

A physical therapist examined her that same day. The therapist found that Bodnar had swelling from the left knee to the ankle, warm skin over the medial tibial plateau, red spots on the lower left leg, and could walk only in pain with the assistance of a crutch, and only for fifty feet.

The "admission diagnosis" recorded in handwriting on a hospital form was: "s/p Removal of Infected HWR (L) femur inability t[o] ambulate." Without the abbreviations, we take this to mean: "status-post removal of infected hardware from left femur—inability to walk." The "other diagnosis," as recorded on the hospital form, was "(L) knee sprain" or "left knee sprain."

Estimating Bodnar's hospital stay would last thirty-one days, Bodnar's attending physician, Dr. Bigliani, completed an admission request form certifying that inpatient hospitalization was necessary. Such certification is a prerequisite to payment under Medicare. *See* 42 U.S.C. § 1395f(a)(3) (Supp. V 1987). The hospital's Utilization Review Committee (URC) also approved Bodnar's stay, at first only for eleven days until August 17, 1982, but later to August 26, 1982. The Medicare statute requires every hospital to create a URC composed of professional medical personnel to review inpatient admissions to determine whether they are compelled by medical necessity, and if not, to notify the patient, the hospital, and the attending physician of the URC determination. *See* 42 U.S.C. § 1395x(k) (1982); *Kraemer v. Heckler*, 737 F.2d 214, 216 (2d Cir.1984) (discussing role of URC). The *absence* of a finding by the URC that further inpatient hospital services are not medically necessary is an additional prerequisite to reimbursement. *See* 42 U.S.C. § 1395f(a)(6) (Supp. V 1987). The URC's "certification," combined with Dr. Bigliani's "certification," satisfied the "dual certification" prerequisite for Medicare reimbursement.

* Of the Ninth Circuit Court of Appeals, sitting by designation.

Bodnar had x-rays taken not only of her left knee but also of her left hip. Healing changes were noted in the hip. The knee was determined not to be fractured or dislocated. Rather, a spur had developed at the inferior portion of the patella. Over the coming days, she underwent intensive physical therapy for the knee and was released, able to "ambulate well," on August 16, 1982.

When the hospital requested Medicare reimbursement, the Health Care Financing Administration denied the request on grounds that Bodnar's treatment could have been provided on an outpatient rather than an inpatient basis. The Medicare statute provides that the Secretary may not make payments for "items or services ... not reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A) (Supp. V 1987). The State of New York, acting on behalf of the hospital, requested a hearing before an administrative law judge to appeal the denial of reimbursement. To aid in its review of the record, the judge contacted an independent physician, Dr. Boris J. Paul from the town of Guilderland, New York, to review the hospital records and to make a recommendation whether inpatient services were reasonable and necessary. Dr. Paul, who looked only at the records and did not talk with the attending physician or others at the hospital, responded with a one-page letter citing to excerpts of the hospital records and concluding that inpatient services had not been necessary. Accordingly, the administrative law judge issued a decision on May 16, 1986, denying reimbursement.

The State appealed to the Appeals Council of the Social Security Administration's Office of Hearings and Appeals. By letter dated July 8, 1986, the Appeals Council declined to review the decision of the administrative law judge. When the State filed for judicial review in the United States District Court for the Northern District of New York, the Appeals Council changed its position and requested a re-

mand for it to reconsider its decision. On September 4, 1987, the Council affirmed the decision of the administrative law judge. Relying on a Health Care Financing Administration ruling providing that inpatient hospital care for rehabilitative services is "reasonable and necessary" only when a "patient needs a relatively intense rehabilitation program that requires a multidisciplinary coordinated team approach," see HCFAR–85–2 at 3, 50 Fed. Reg. 31,040 (July 31, 1985), the Council found that Bodnar's hospitalization had not been reasonable and necessary, because she was still able to walk limited distances—fifty feet with a cane—and the only rehabilitation prescribed for her after rest was walking around with a cane. The hospital again applied for review in the district court. The matter was referred to a magistrate who recommended reversing the Appeals Council on grounds that the "dual certification" of the attending physician and the URC as to the necessity of the inpatient services bound the Secretary to provide Medicare reimbursement. On August 1, 1989, the district court adopted this conclusion of the magistrate and also held, in the alternative, that the decision of the Appeals Council was not supported by substantial evidence.

On this appeal, the Secretary contends, first, that the dual certification of an admitting physician and the URC do not bind him to provide Medicare coverage and, second, that substantial evidence supports his decision to deny coverage in this case. We agree that dual certification does not bind the Secretary, but nevertheless find that substantial evidence does not support his decision. We therefore affirm.

## DISCUSSION

■ As noted, the Secretary may not provide reimbursement for items and services that are "not reasonable and necessary" for diagnosis or treatment of illness or injury. See 42 U.S.C. § 1395y(a)(1)(A).[1]

1. We have previously held that Congress's delegation of authority to the Secretary to deny coverage for services that are not reasonable

and necessary does not correlatively imply that Medicare coverage must extend to all medically

In determining whether services rendered are "not reasonable and necessary," we have no doubt that the Secretary may take into account not only *what kind* of services were provided, but also *where* those services were provided, i.e., whether those services were provided in the most appropriate, cost-effective setting. *See* HCFAR–85–2 at 3, 50 Fed.Reg. 31,040 (July 31, 1985) ("It must be reasonable and necessary to furnish the care on the inpatient hospital basis, rather than in a less intensive facility, such as a SNF [skilled nursing facility], or on an outpatient basis."); *Lerum v. Heckler*, 774 F.2d 210, 214 (7th Cir.1985). *But see Hultzman v. Weinberger*, 495 F.2d 1276, 1282 (3d Cir.1974) (holding that section 1395y(a)(1) does not authorize Secretary to exclude from coverage services that are reasonable and necessary solely because they could have been provided on an outpatient rather than inpatient basis).

1. *Whether the Secretary Is Bound by Dual Certification*

■ The State of New York contends that the Secretary is bound to provide reimbursement when "dual certification" is made by the attending physician and the URC. The district court in this case and other district courts in this circuit have found dual certification binding on the Secretary. *See State of New York ex rel. Johnson v. Secretary of Health and Human Servs.*, No. 86–CIV–639 (N.D.N.Y. Mar. 1, 1989) (1989 Westlaw 19607); *Israel v. Secretary of Health and Human Servs.*, 669 F.Supp. 61, 63 (W.D.N.Y.1987); *Walsh v. United States Dep't of Health and Human Servs.*, 636 F.Supp. 358, 361–62 (E.D. N.Y.1986); *Gartmann v. United States Dep't of Health and Human Servs.*, 633 F.Supp. 671, 681–82 (E.D.N.Y.1986). We do not agree with these cases.

The Medicare statute unambiguously vests final authority in the Secretary, and no one else, to determine whether a service is reasonable and necessary, and thus whether reimbursement should be made. *See* 42 U.S.C. § 1395ff(a) (Supp. V 1987) ("The determination of whether an individ-

ual is entitled to benefits under [Medicare] part A or part B ... shall be made by the Secretary in accordance with regulations prescribed by him."); *see also Heckler v. Ringer*, 466 U.S. 602, 617, 104 S.Ct. 2013, 2023, 80 L.Ed.2d 622 (1984) ("The Secretary's decision as to whether a particular medical service is 'reasonable and necessary' and the means by which she implements her decision ... are clearly discretionary decisions." (citations omitted)).

Nowhere does the language of the dual certification requirement provide that such certification is not just a prerequisite or condition *precedent* to payment, but also a condition *sufficient* that requires the Secretary to extend coverage, in derogation of his final authority pursuant to section 1395ff(a). We read the dual certification requirement as a necessary first step for reimbursement, but not binding as to the Secretary's interpretation of what is "reasonable and necessary." *See Himmler v. Califano*, 611 F.2d 137, 140 (6th Cir.1979) (dual certification "*initially* determine[s]" eligibility for payment, but Secretary makes "*final* determination" subject to his regulations); *cf. United States v. Beck*, 758 F.2d 1553, 1558 (11th Cir.1985) (large volume of Medicare claims makes reliance necessary "in the first instance" on physician's certification of necessity). Moreover, as we have recognized, the physician certification requirement is a precondition for *payment*, not *coverage*. *See Friedman v. Secretary of Dep't of Health and Human Servs.*, 819 F.2d 42, 44 (2d Cir.1987) ("[C]overage and payment are treated as two separate inquiries.... Because the claimant in the instant case disputes the Secretary's determination concerning coverage, the certification requirement is irrelevant.").

Nor has the Secretary bound himself through his own regulations to provide reimbursement whenever dual certification is made. To the contrary, one regulation specifically provides that a decision of the URC is not a "determination" by the Secretary under section 1395ff(a), but rather only one item among other pertinent evi-

dence that the Secretary may use to determine whether payment is due. *See* 42 C.F.R. § 405.706(a) (1986).

We recognize that the legislative history of the Medicare statute highlights the importance of the physician and the URC in determining eligibility. *See, e.g.*, S.Rep. No. 404, 89th Cong., 1st Sess. 46, *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 1986 ("The committee's bill provides that the physician is to be the key figure in determining utilization of health services—and provides that it is a physician who is to decide upon admission to a hospital,...."). We find no contradiction, however, between Congress's vision of the physician and the URC as gatekeepers initially determining eligibility and Congress's delegation to the Secretary of ultimate authority to determine whether the services provided a patient are covered by Medicare.

2. *Substantial Evidence*

■ Even though the Secretary is not bound by the dual certification, this is not to say the Secretary's discretion is boundless. The Secretary's determination that Bodnar's hospitalization was "not reasonable and necessary" must be supported by substantial evidence. *See Hurley v. Bowen*, 857 F.2d 907, 912 (2d Cir.1988). The substantial evidence standard requires " 'more than a mere scintilla' " of evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). It requires " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.*

■ When reviewing for substantial evidence, we review the record as a whole. *See Hurley v. Bowen*, 857 F.2d at 912. This means that in assessing whether the evidence supporting the Secretary's position is substantial, we will not look at that evidence in isolation but rather will view it in light of other evidence that detracts from it. *See St. Elizabeth Community Hosp. v. Heckler*, 745 F.2d 587, 592 (9th Cir.1984); *see generally Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477–91, 71 S.Ct. 456, 459–66, 95 L.Ed. 456 (1951).

In demonstrating to us that substantial evidence underlies his determination that inpatient hospitalization was not reasonable and necessary, the Secretary of course is at an immediate disadvantage, because none of his representatives ever personally examined Bodnar. To reach his determination, the Secretary had to patch together discrete findings and observations in records made by the very same health care professionals who were on the scene examining and caring for Bodnar and who were unquestionably in the best position to certify the necessity of a hospital stay. Given the Secretary's second-hand knowledge, we must necessarily demand that his review of the record be probing, precise, and accurate.

Our review of the entire record reveals that the Secretary plainly missed items of pertinent weight in the hospital records. The Appeals Council and the administrative law judge [2] rejected the possibility that Bodnar's knee problem might be connected to her previous left hip infection, and therefore might pose a threat of serious complication. The Appeals Council stated, "The initial clinical examination [upon Bodnar's admission to the hospital] showed no swelling, redness or warmth around the knee and the knee joint was distant from the site of left hip swelling and infection." Similarly, the administrative law judge stated that upon Bodnar's admission, "[t]here was no swelling or redness of the knee to indicate the presence of infection." Dr. Paul, upon whom the administrative law judge relied, did not ever mention the possibility of any connection between the knee injury and the hip infection. But in fact, Bodnar's primary admission diagnosis stated in abbrevi-

---

**2.** Although the decision of the Appeals Council and not that of the administrative law judge is the Secretary's final decision for purposes of our review under 42 U.S.C. § 405(g) (1982), the decision and findings of the administrative law judge are part of the record and also subject to our review. *Cf. Universal Camera Corp. v. NLRB*, 340 U.S. 474, 493, 71 S.Ct. 456, 467, 95 L.Ed. 456 (1951).

 

ated form: "status-post removal of infected hardware from left femur—inability to walk." This shows that at the time certification was made the attending physician saw a possible link between Bodnar's left hip infection from which she had just recovered and the pain in her knee. Indeed, the hospital physical therapist who examined Bodnar on the day of admission noted, "Red spots on (L) [left] lower leg which pt [patient] reports were larger before." The physical therapist also found swelling from the left knee to the ankle. Neither the Appeals Council nor the administrative law judge ever remarked on the admission diagnosis or the observations of the physical therapist.

That the admitting doctor found no swelling at the particular time he examined Bodnar and did not comment on whether he found redness (but only that Bodnar denied a history of redness) by no means diminishes the possibility that her treating physician, Dr. Bigliani, and the URC took Bodnar's history of swelling and the physical therapist's finding of red spots as signs of infection when reviewing her case and certifying that hospitalization was necessary.

Finally, the Appeals Council decision stated that the physical therapist's evaluation showed that "the beneficiary could walk at least 50 feet without assistive devices." Yet, as the decision itself observes on the very next page, the physical therapist's evaluation actually found that "the beneficiary was still able to ambulate at least 50 feet *using one crutch*" (emphasis added). The decision never acknowledges this contradiction on the issue of whether she could walk without a crutch or an assistive device. For an elderly person living alone, the ability to walk obviously plays a role in determining whether inpatient hospitalization is necessary. The Appeals Council decision never explains how a seventy-seven-year-old woman who can walk only fifty feet with a crutch is, as it stated, "independent in all activities of daily living," such that she did not need inpa-

tient hospital care. She arrived at the hospital, after all, in an ambulance, not by public transportation.[3]

The judgment of the district court is affirmed.

---

**3.** Because we find that substantial evidence does not support the Secretary's decision, we have no occasion to determine, as the parties urge, whether the Secretary need demonstrate even more than substantial evidence under the "treating physician" rule which we have applied in disability determination cases. *See, e.g., Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986).