**Barbara SMITH on Behalf of Mary McDONALD, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

**No. 2:92CV336.**

United States District Court, D. Vermont.

April 5, 1994.

Kathleen Cleghorn, Vermont Legal Aid, Medicare Advocacy Project, Springfield, VT, for plaintiff.

Christopher B. Baril, Asst. U.S. Atty., Rutland, VT, for defendant.

### OPINION AND ORDER

NIEDERMEIER, United States Magistrate Judge.

Mary McDonald appeals from a final decision of the Secretary, denying her claim for Medicare Part A home health care benefits. She brings this action pursuant to 42 U.S.C. § 405(g). Both parties have moved for summary judgment and consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R.Civ.P. 73. For the following reasons, I grant McDonald's motion and deny the Secretary's.

### I. BACKGROUND

#### A. Procedural History

The Visiting Nurse Association of Burlington ("VNA") provided the home health care services at issue from July 27, 1987 through February 29, 1988. On July 27, 1987, VNA notified McDonald that services would no longer be covered under Medicare. R. 88. On April 6, 1988, McDonald filed a request for Medicare home benefits. R. 24. Medicare's fiscal intermediary denied the claim for benefits on September 15, 1988. R. 28.

McDonald requested a hearing before the Secretary. On June 22, 1989, Administrative Law Judge William J. Wilkin ("ALJ") issued a written decision denying coverage. R. 11–13. The ALJ found that McDonald did not require or receive intermittent skilled nursing care during the period at issue. R. 13. The Appeals Council affirmed the ALJ's decision and it became the final decision of the Secretary on August 24, 1992. R. 3–5. Having exhausted her administrative remedies, McDonald filed a complaint with this Court on October 30, 1992.

#### B. Statement of Facts

McDonald was eighty-two years old when she was admitted to VNA care. R. 32. She suffered from angina, memory deficits, confusion and forgetfulness, anemia, and cataracts. R. 33, 64.

On June 20, 1987, Dr. Susan Warner, McDonald's treating physician, signed a home health certification and plan of treatment ordering home health care through the VNA.[1] R. 39–42. Dr. Warner ordered the

---

1. Home health care providers will not be paid    under Medicare unless a physician certifies that

VNA to assess McDonald's cardiopulmonary status, medication compliance, and mental status. R. 33. Dr. Warner also ordered the VNA to set up medication envelopes and provide patient education on medication compliance, diet, signs and symptoms, and appropriate activity levels. *Id.* The VNA initially visited McDonald three times a week for two weeks, with visits decreasing thereafter to once a week for the period at issue. *Id.*

On August 15, 1987, Dr. Warner additionally ordered the VNA to assess McDonald's blood pressure, lungs, and edema. R. 39–42. The nurses provided continuing patient education on medication compliance, reportable signs and symptoms, and diet. *Id.*

The ALJ found that McDonald's illness did not require skilled nursing services because her condition was stable. R. 12. He concluded that the nurse was "primarily responsible for monitoring a relatively stable condition evidenced by stable vital signs and stable cardiopulmonary status." *Id.* The ALJ also found that the services McDonald received were not skilled because the nurses' primary requirement was to prepare McDonald's daily medications and that this service was one that McDonald or another person was capable of performing. *Id.* Finally, the ALJ found that the nurses were not responsible for additional education. *Id.*

## II. *DISCUSSION*

### A. *Standard of Review*

■ The Secretary's determination is binding on this Court if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir. 1990). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In determining whether the decision is supported by substantial evidence, this Court must review

the record as a whole, *State of New York on Behalf of Bodnar v. Secretary of Health and Human Services,* 903 F.2d 122, 126 (2d Cir. 1990), that is, we will not view the evidence in isolation, but rather in light of detracting evidence. *Id.* (citing *St. Elizabeth Community Hospital v. Heckler,* 745 F.2d 587, 592 (9th Cir.1984)) (citations omitted).

■ However, "before the insulation of the substantial evidence comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Gartmann v. Secretary of U.S. Dept of Health,* 633 F.Supp. 671, 680 (E.D.N.Y.1986) (quoting *Klofta v. Mathews,* 418 F.Supp. 1139, 1411 (E.D.Wis. 1976)). While the Secretary is allowed deference on supported findings of fact, this Court is not bound by her conclusions or interpretations of the law. *Gartmann,* 633 F.Supp. at 679–80.

### B. *Home Health Care*

■ Title XVIII of the Social Security Act provides for reimbursement of home health care services for the elderly. *See* 42 U.S.C. § 1395d(a)(3). The remedial purpose of the Medicare program requires that it be broadly construed. *Gartmann,* 633 F.Supp. at 679. "Care must be taken 'not to disentitle old, chronically ill and basically helpless, bewildered and confused people ... from the broad remedy which Congress intended to provide our senior citizens.'" *Id.* (quoting *Ridgely v. Secretary of the Dep't of Health, Education and Welfare,* 345 F.Supp. 983, 993 (D.Md.1972), *aff'd,* 475 F.2d 1222 (4th Cir. 1973)). However, claimants have the burden of proving their entitlement to benefits. *Friedman v. Sec. Dept. of Health and Human Services,* 819 F.2d 42, 45 (2d Cir.1987).

■ Reimbursement for home health services is contingent upon a showing that the claimant is, *inter alia,* "[i]n need of intermittent skilled nursing care." [2] 42 C.F.R.

---

a patient is homebound and in need of skilled nursing care, and that a plan of treatment has been established. 42 U.S.C. § 1395n(a)(2)(A). However, certification does not bind the Secretary to a finding of eligibility. *See, e.g., State of New York on Behalf of Bodnar v. Sec. of Health*

*and Human Services,* 903 F.2d 122, 125 (2d Cir. 1990).

**2.** In relevant part, the regulations establish the following:

§ 409.42(b)(3). Congress has authorized the Secretary to make final eligibility determinations. *See* 42 U.S.C. § 1395ff(a); *Bodnar,* 903 F.2d at 125. While the Secretary may deny coverage for services that are "not reasonable and necessary for the diagnosis or treatment of illness or injury . . . ," 42 U.S.C. § 1395y(a)(1)(A), the patient's condition as a whole, rather than the specific services provided, must be considered in the analysis of the need for skilled nursing care. *Gartmann,* 633 F.Supp. at 679. In assessing a patient's condition, the reviewing court must follow a common sense, non-technical approach. *Id.* (citing *Howard v. Heckler,* 618 F.Supp. 1333, 1335 (E.D.N.Y.1985)).

### C. *Skilled Services*

The Secretary's regulations define skilled services as "so inherently complex that [they] can be safely and effectively performed only by, or under the supervision of, professional or technical personnel." 42 C.F.R. § 409.-32(a). However, "[a] condition that does not ordinarily require skilled services may require them because of special medical complications. . . ." 42 C.F.R. § 409.32(b).

#### 1. Patient Education

■ Patient education is a skilled service if a professional is necessary to teach the patient self-maintenance, 42 C.F.R. § 409.-33(a)(3), and management of the treatment regimen. H.I.M. 11, § 205.1B(3).[3] However, after a reasonable period of time, if it becomes apparent that the teaching or training is unsuccessful, or that the patient is unable to learn, then further teaching would cease to be reasonable and necessary. *Id.* The reason for the inability to learn or to be trained should be documented in the record. *Id.*

(b) *Conditions the beneficiary must meet.* The beneficiary must be—
  (1) Confined to the home or in an institution that is neither a hospital nor primarily engaged in providing skilled nursing or rehabilitation services;
  (2) Under the care of a physician who is a doctor of medicine, osteopathy, or podiatric medicine; and
  (3) In need of intermittent skilled nursing care or physical or speech therapy. . . .

In this case, the nurses provided patient education throughout the period pursuant to Dr. Warner's home health certifications and plans of treatment. R. 33, 39–41, 44. The education focused on McDonald's medications, diet, activity level, and the signs and symptoms of changes in her condition. *Id.* Patient education was a skilled service because it concerned the management of McDonald's treatment and her maintenance of the condition.

Since patient education was a skilled service, the next question is whether it was unsuccessful. H.I.M. 11, § 205.1B(3). Although McDonald's memory deficits made it difficult for her to learn, R. 64–73, it is not apparent that the efforts were unsuccessful. McDonald progressed toward the educational goals set out in the plans of treatment. R. 61. In fact, she achieved some of the goals. *Id.* Although McDonald required help with her medications, her progress does not lead this Court to find that it became apparent that the education was unsuccessful. Accordingly, the services were reasonable and necessary.

The ALJ further found that the nurses were not responsible for "additional education." R. 12. It is unclear what the ALJ meant. It is clear, however, that Dr. Warner ordered continuing education and that McDonald received such education throughout the period at issue. The education was directed toward the self-management and maintenance of her condition, and was not unsuccessful. The service was, therefore, a reasonable and necessary skilled service. 42 C.F.R. § 409.33(a)(3); H.I.M. 11, § 205.-1B(3).

#### 2. Overall Management of Treatment Plan

■ 42 C.F.R. § 409.33(a)(1) provides that overall management of a treatment plan may

42 C.F.R. § 409.42(b). It is undisputed in this case that plaintiff was homebound and under the care and treatment of a physician during the relevant time periods. R. 12.

**3.** The Health Care Financing Administration (HFCA) provides for the implementation of the Medicare program to its health care providers and fiscal intermediaries in its Health Insurance Manuals ("H.I.M."). Volume 11 contains the instructions regarding Home Health Agencies.

itself be a skilled service, even where the individual services provided are not skilled. *Folland v. Sullivan,* No. 90–348, slip op. at 12–13, 1992 WL 259230 *6 (D.Vt. July 6, 1992) (Report and Recommendation). If the patient's age and the nature of her condition create a high potential for serious complications, only a skilled professional would have the ability to understand the relationship and effect of the various services provided. 42 C.F.R. § 409.33(a)(1). The management of such a case require the skills of a nurse even though the individual services provided are not skilled. *Id.*

The ALJ found that McDonald did not require a skilled level of care because her condition was stable. R. 12. The ALJ based his conclusion on the nursing notes, *id.,* which he interpreted to show the following:

> During the period in question the beneficiary's condition was stable[;] ... the beneficiary's cardiopulmonary status was stabilized[;] ... The visiting nurse was primarily responsible for monitoring a relatively stable condition ... evidenced by stable vital sign and stable cardiopulmonary status; ... and to put [medications] into envelopes for her for that week.

*Id.* This conclusion is not supported by substantial evidence.

In her certification report, Dr. Warner stated that McDonald suffered from angina, anemia, cataracts and memory deficits. R. 33. Dr. Warner characterized McDonald's condition as "fragile," and noted that complications or changes in her condition were probable. R. 74. Dr. Warner confirmed that skilled nursing care was necessary to monitor and interpret any signs of change in her condition. R. 75. She ordered the nurses to assess McDonald's cardiopulmonary status during each visit, and to put daily medications in envelopes for the following week. *Id.*

### D. *Errors of Law*

#### 1. ALJ's Assessment of McDonald's Condition

■ Section 409.33(a)(2) provides that assessment of a patient's condition may constitute skilled care under proper circumstances.

*Id.* The ALJ's conclusion that McDonald's condition was stable may have been an attempt to distinguish § 409.33(a)(2), which covers assessment of a patient's condition until it is "stabilized." Dr. Warner's treatment plans and report illustrate that *she* considered McDonald's condition unstable enough to be characterized as "fragile," requiring the type of skilled assessment contemplated by § 409.33(a)(2). R. 39–41, 74.

The ALJ's interpretation of McDonald's condition is flawed because it impermissibly relies on ex post facto determinations. Dr. Warner's opinion as to necessary care, rendered at the time of certification, should not have been rejected on the basis of a retrospective review of McDonald's vital signs. The logic of the Secretary's Home Health Agency Manual on this point is convincing:

> The determination of whether the services are reasonable and necessary should be made in consideration that a physician has determined that the services ordered are reasonable and necessary. The services must, therefore, be viewed from the perspective of the condition of the patient *when the services were ordered* and what was, at the time, reasonably expected to be appropriate treatment for the illness or injury throughout the certification period.

Home Health Agency Manual § 205.1(A)(4) (emphasis added). *See Colton v. Secretary of Health and Human Services,* No. 90–244, slip op. at 12–13, 1991 WL 350050 *5 (D.Vt. Nov. 8, 1991) (Report and Recommendation) *adopted,* (D.Vt. Jan. 30, 1992). The fact that McDonald did not experience the complications sought to be avoided by the type of care described in §§ 409.33(a)(1)–(2) does not mean that those services were not reasonably expected to be appropriate treatment throughout the certification period, and thus reasonable and necessary. To hold otherwise would be illogical. The fact that skilled care has stabilized a claimant's health does not render that level of care unnecessary: "[a]n elderly claimant need not risk a deterioration of his fragile health to validate the continuing requirement for skilled care." *Folland,* No. 90–348. slip op. at 17.

The only basis for the ALJ's rejection of Dr. Warner's opinion is the ALJ's ex post

facto interpretation of McDonald's vital signs. This is an error or law.

### 2. Consideration of 42 C.F.R. § 409.33(a)(1)

■ 42 C.F.R. § 409.33(a)(1) provides that overall management of a treatment plan may itself be a skilled service, even where the individual services provided are not skilled, *Folland,* No. 90–348, slip op. at 12–13, if the patient's age and condition create a potential for serious complications. 42 C.F.R. § 409.-339(a)(1). McDonald was 82 years old, and suffered from, *inter alia,* angina, memory deficits, and restricted endurance and vision. R. 39. She required careful cardiopulmonary and medication monitoring, and observation to detect signs of deterioration in her condition. R. 39–41. Her age and condition created a potential for serious complications and required the services of a skilled professional. McDonald's condition was consistent with the requirements of § 409.33(a)(1). The ALJ apparently did not consider the applicability of § 409.33(a)(1). This is an error of law. *See Colton,* No. 90–244, slip op. at 11–13.

Furthermore, the ALJ focused his analysis on one of the nurses' services and found that the service was not skilled. R. 12. When analyzing the services provided to a beneficiary, the ALJ must concentrate on the aggregate of services provided, 42 C.F.R. § 409.33(a)(1), and the beneficiary's condition as a whole. *Gartmann,* 633 F.Supp. at 679. While it is true that the nurses put McDonald's medications into envelopes for daily consumption, this was only one of the services performed during their visits. The nurses also monitored her vital signs for early signs of changes or complications in her cardiopulmonary condition and provided patient education. By concentrating on a specific service, rather than the aggregate of services, and McDonald's condition as a whole, the ALJ failed to correctly apply the law.

Therefore, the ALJ's decision misapplies § 409.33(a)(1)–(2) and is not supported by substantial evidence in light of the treating physician's contemporaneous certification. *See Holland,* 927 F.2d at 60; *Bodnar,* 903 F.2d at 126. *See also Colton,* No. 90–244, slip op. at 11–13 (failure to consider §§ 409.-

33(a)(1)–(2) is error); *Kertesz v. Crescent Hills Coal Co.,* 788 F.2d 158, 163 (3d Cir. 1986).

### 3. Treating Physician's Opinion

■ The Secretary is afforded the initial determination of the weight to be given to a treating physician's opinion in Medicare cases. *See State of N.Y. on Behalf of Stein v. Sec'y of HHS,* 924 F.2d 431, 433–34 (2d Cir.1991). However, the Secretary is expected to place significant reliance on the informed opinion of a treating physician and apply "some extra weight" to the opinion, or supply "a reasoned basis, in conformity with statutory purpose, for declining to do so." *State of N.Y. on Behalf of Holland v. Sullivan,* 927 F.2d 57, 60 (2d Cir.1991) (citing *Schisler v. Bowen,* 851 F.2d 43, 46 (2d Cir. 1988)).

The ALJ did not give "some extra weight" to Dr. Warner's opinion on the necessity of skilled nursing care, nor did he supply a reasoned basis for declining to do so. *See Holland,* 927 F.2d at 60 (citation omitted). This is an error of law.

Viewing McDonald's condition as a whole, and all of the services provided, the home health care constituted reasonable and necessary skilled services under §§ 409.33(a)(1)–(3). The Secretary's decision is not supported by substantial evidence.

### CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment is GRANTED, and the Secretary's motion for summary judgment is DENIED.