Walter A. BERGERON, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

File No. 2:93cv81.

United States District Court, D. Vermont.

April 5, 1994.

Kathleen Cleghorn, Vermont Legal Aid, Medicare Advocacy Project, Springfield, VT, for plaintiff.

Christopher B. Baril, Asst. U.S. Atty., Rutland, VT, for defendant.

## OPINION AND ORDER

NIEDERMEIER, United States Magistrate Judge.

Walter A. Bergeron brings this action pursuant to 42 U.S.C. § 405(g) challenging the denial of Medicare Part A home health care benefits by the Secretary of Health and Human Services Donna E. Shalala ("Secretary"). He seeks review of the Secretary's final decision that he did not require or receive intermittent skilled nursing services and that the services he received were not reasonable and necessary for the treatment of his medical condition. Both parties have moved for summary judgment and consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. 636(c) and Fed. R.Civ.P. 73. For the following reasons, I grant Bergeron's motion, and deny the Secretary's motion.

## I. BACKGROUND

### A. Procedural History

The Burlington Visiting Nurse Association ("BVNA") provided the home health care services at issue to Walter Bergeron from

February 8, 1990 through January 31, 1991. On February 8, 1990, Bergeron received a notice from the BVNA that its services would no longer be covered under Medicare. R. 42. On January 23, 1991, Bergeron filed a request for reconsideration. R. 47. Medicare's fiscal intermediary, Blue Cross and Blue Shield of Maine ("intermediary"), denied his claim for benefits on June 7, 1991. R. 53–56.

Bergeron filed a request for a hearing. On December 27, 1991, Administrative Law Judge William J. Wilkin ("ALJ") found that Bergeron did not require or receive intermittent skilled nursing care during the period at issue and that the services he received were not reasonable or necessary. R. 34–41. On January 27, 1993, the Appeals Council affirmed the ALJ's decision making it the final decision of the Secretary. R. 3–4. Having exhausted his administrative remedies, Bergeron filed a complaint with this Court on March 29, 1993.

### B. Statement of Facts

Walter Bergeron is eighty-six years old and suffers from diabetes mellitus, arterial fibrillation, and a profound hearing loss. R. 62, 69. He also occasionally suffers from chronic ear infection and hypertension. R. 91. He is functionally limited in hearing, endurance and ambulation. R. 62–68. He was hospitalized from December 9, 1989 through December 13, 1989, for hypothermia, hypoglycemia, and changes in his heart rate. R. 69.

Dr. Allen Ramsay, his treating physician, signed a home health certification and plan of treatment ordering skilled nursing services beginning December 15, 1989.[1] The nursing visits were scheduled twice a week for nine weeks to monitor his diabetic status and blood glucose level via finger sticks and to evaluate his medical and dietary compliance, the signs and symptoms of glycemic reactions, his functional ability, safety in his home, his cardiac status and his family's ability to care for him. R. 62. The nurses provided patient education to Bergeron and his family about the signs and symptoms of glycemic reactions, medication and diet compliance, expected interactions, and other reportable signs and symptoms. R. 62. The nurses also provided patient education on the signs and symptoms of cardiac complications and how to pace his daily activities. R. 62.

On February 15, 1990, the nursing visits decreased to twice a month for two months to assess Bergeron's general health maintenance, conduct finger stick glucose testing and provide home health aide ("HHA") supervision. R. 63. On April 15, 1990, the visits decreased to every other month to assess general health maintenance and conduct finger stick testing. R. 64–68. The nurses performed diabetic foot care throughout the period. R. 80.

The ALJ found that the services provided were not "within the realm of skilled nursing services set forth in the Regulations and in the Act." The ALJ concluded from the progress reports that Bergeron's medication did not change; his glucose tests were within the normal range, with the exception of one reading; his blood pressure was occasionally elevated but no treatment was instituted; and the services provided were not complex. R. 38–39. The ALJ also held that the services provided were not reasonable and necessary because Bergeron's condition was part of a long-standing pattern, no changes were made in his treatment plan, and his family met his medical needs. R. 39.

## II. DISCUSSION

### A. Standard of Review

■ The Secretary's determinations are binding on this court if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rich-*

---

1. Home health care providers will not be paid under Medicare unless a physician certifies that a patient is homebound and in need of skilled nursing care, and that a plan of treatment has been established. 42 U.S.C. § 1395n(a)(2)(A). However, certification does not bind the Secretary to a finding of eligibility. *See, e.g., State of New York on Behalf of Bodnar v. Sec. of Health and Human Services*, 903 F.2d 122, 125 (2d Cir. 1990).

*ardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In determining whether the decision is supported by substantial evidence, this Court must review the record as a whole, *State of New York on Behalf of Bodnar v. Secretary of Health and Human Services,* 903 F.2d 122, 126 (2d Cir. 1990), that is, we will not view the evidence in isolation, but rather in light of detracting evidence. *Id.* (citing *St. Elizabeth Community Hospital v. Heckler,* 745 F.2d 587, 592 (9th Cir.1984)) (citations omitted).

■ However, "before the insulation of the substantial evidence comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Gartmann v. Secretary of U.S. Dept of Health,* 633 F.Supp. 671, 680 (E.D.N.Y.1986) (quoting *Klofta v. Mathews,* 418 F.Supp. 1139, 1411 (E.D.Wis. 1976)). While the Secretary is allowed deference on supported findings of fact, this Court is not bound by her conclusions or interpretations of the law. *Gartmann,* 633 F.Supp. at 679–80.

**B. *Home Health Care***

Title XVIII of the Social Security Act provides for reimbursement of home health care services for the elderly. *See* 42 U.S.C. § 1395d(a)(3). The remedial purpose of the Medicare program requires that the statute be broadly construed. *Gartmann,* 633 F.Supp. at 679. "Care must be taken 'not to disentitle old, chronically ill and basically helpless, bewildered and confused people .. from the broad remedy which Congress intended to provide our senior citizens.'" *Id.* (quoting *Ridgely v. Secretary of the Dep't of Health, Education and Welfare,* 345 F.Supp. 983, 993 (D.Md.1972), *aff'd,* 475 F.2d 1222 (4th Cir.1973)). However, claimants have the burden of proving their entitlement to benefits. *Friedman v. Sec. Dept. of Health and Human Services,* 819 F.2d 42, 45 (2d Cir. 1987).

Reimbursement for home health services is contingent upon a showing that the claimant is, *inter alia,* "[i]n need of intermittent skilled nursing care." [2] 42 C.F.R. § 409.42(b)(3). Congress has authorized the Secretary to make final eligibility determinations in accordance with regulations promulgated by her. *See* 42 U.S.C. § 1395ff(a); *Bodnar,* 903 F.2d at 125. While the Secretary may deny coverage for services that are "not reasonable and necessary for the diagnosis or treatment of illness or injury …," 42 U.S.C. § 1395y(a)(1)(A), the patient's condition as a whole, rather than the specific services provided, must be considered in the analysis of the need for skilled nursing care. *Gartmann,* 633 F.Supp. at 679. In assessing a patient's condition, the reviewing court must follow a common sense, non-technical approach. *Id.* (citing *Howard v. Heckler,* 618 F.Supp. 1333, 1335 (E.D.N.Y.1985)).

**C. *Skilled Services***

The Secretary's regulations define skilled services as "so inherently complex that [they] can be safely and effectively performed only by, or under the supervision of, professional or technical personnel." 42 C.F.R. § 409.32(a). However, "[a] condition that does not ordinarily require skilled services may require them because of special medical complications…." 42 C.F.R. § 409.32(b).

**1. Foot Care**

Bergeron suffers from diabetes mellitus, a metabolic disease that results in circulatory difficulty, or areas of desensitization, in the legs or feet. Home Health Agency Manual § 232.10(C). As such, the performance of otherwise routine foot care constitutes a hazard and is considered a skilled service. *Folland v. Sullivan,* No. 90–348, slip op. at 9–10, 1992 WL 295230 (D.Vt. July 6, 1992) (Report

**2.** In relevant part, the regulations establish the following:

(b) *Conditions the beneficiary must meet.* The beneficiary must be—

(1) Confined to the home or in an institution that is neither a hospital nor primarily engaged in providing skilled nursing or rehabilitation services;

(2) Under the care of a physician who is a doctor of medicine, osteopathy, or podiatric medicine; and

(3) In need of intermittent skilled nursing care or physical or speech therapy….

42 C.F.R. § 409.42(b). It is undisputed in this case that Bergeron was homebound and under the care and treatment of a physician during the relevant time periods. R. 37.

and Recommendation) (citing Home Health Agency Manual § 232.10(C)). Bergeron was provided diabetic foot care from February 8, 1990 through January 31, 1991, R. 80. Although the plans of treatment do not all specify diabetic foot care, Bergeron's diabetes mellitus, age, and immobility create a high probability of complications supporting a finding that this constituted a personal care service within the overall management of his treatment plan. 42 C.F.R. § 409.33(a)(1).

2. Overall Management of Treatment Plan

42 C.F.R. 409.33(a)(1) provides that overall management of a treatment plan may itself be a skilled service, even where the individual services provided are not skilled. *Folland*, No. 90–348, slip op. at 12–13. Section 409.-33(a)(1) acknowledges that if the nature of the patient's condition, age, and immobility create a high potential for serious complications, only a skilled professional would have the ability to understand the relationship and effect of the various services provided. The management of such a case would require the skills of a nurse even though the individual services provided are not skilled. *Id.*

The ALJ found that the services provided during the period at issue were not reasonable and necessary because Bergeron's condition was stable and because the services did not constitute skilled nursing care. R. 38–39. The ALJ reached this conclusion on the basis of the nursing notes, *id.*, which he interpreted to show the following:

> [E]xcept for Micronase, the beneficiary did not require any medications during the period ...[;] [h]is blood glucose tests were within the normal range ...[;] [h]is blood pressure was occasionally elevated, but no medical treatment for his blood pressure was ever instituted

R. 38. This conclusion is not supported by substantial evidence.

In his report, Dr. Ramsay stated that Bergeron suffered from arterial fibrillation with rapid heart rate, diabetes mellitus, hypertension and chronic ear infections. R. 91. Complications, or changes in his condition for the worse, were probable. *Id.* Dr. Ramsay ordered the nurses to perform "regular evaluation[s] of heart rate, rhythm, and blood pressure. Blood sugars were to be moni-

tored at home ..." *Id.* In response to the question of whether it was necessary for a trained nurse to monitor and interpret signs of change in Bergeron's condition, Dr. Ramsay stated: "Yes, [she] needs to be an RN to do [the] appropriate physical exam." R. 92.

The ALJ apparently did not consider the applicability of § 409.33(a)(1). This is an error of law. *See Colton v. Secretary of Health and Human Services*, No. 92–244, slip op. at 11–13, 1991 WL 350050 *5 (D.Vt. Nov. 8, 1991) (Report and Recommendation), *adopted*, (D.Vt. Jan. 30, 1992). During the period in question, Bergeron was 83 years old, he suffered from diabetes mellitus and restricted mobility, required careful skin care, a diabetic diet, and observation to detect signs of deterioration in his condition. R. 62–69. Bergeron's condition was then very similar to the example given in § 409.-33(a)(1) and was otherwise consistent with the requirements of that section, as indicated by his treating physician.

### D. *Errors of Law*

#### 1. Treating Physician's Opinion

■ The Secretary is afforded the initial determination of the weight to be given to a treating physician's opinion in Medicare cases. *See State of N.Y. on Behalf of Stein v. Sec'y of HHS*, 924 F.2d 431, 433–34 (2d Cir.1991). However, the Secretary is expected to place significant reliance on the informed opinion of a treating physician and apply "some extra weight" to the opinion, or supply "a reasoned basis, in conformity with statutory purpose, for declining to do so." *State of N.Y. on Behalf of Holland v. Sullivan*, 927 F.2d 57, 60 (2d Cir.1991) (citing *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988)).

The ALJ did not give "some extra weight" to Dr. Ramsay's opinion on the necessity of skilled nursing care, nor did he supply a reasoned basis in accordance with statutory purposes for declining to do so. *See Holland*, 927 F.2d at 60 (citation omitted).

#### 2. ALJ's Assessment of Bergeron's Condition

■ Section 409.33(a)(2) provides that assessment of a patient's condition may consti-

tute skilled care under proper circumstances. *Id.* The ALJ's conclusion that Bergeron's condition was "long-standing" and stable may have been an attempt to distinguish § 409.-33(a)(2), which covers assessment of a patient's condition until it is "stabilized." Dr. Ramsay's treatment plans and report illustrate that *he* considered Bergeron's condition unstable enough to merit the type of skilled assessment contemplated by § 409.33(a)(2). R. 62–69. The only basis for the ALJ's rejection of Dr. Ramsay's opinion is the ALJ's interpretation of Bergeron's vital signs and the lack of treatment modification. As in other cases, an ALJ may not substitute his own unsupported judgment for that of a physician. *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir.1986) (in "weighing medical evidence to evaluate the reasoning and credibility of a medical expert ... [an] ALJ may not exercise 'absolute discretion to credit and discredit the expert's medical evidence'... [I]n the absence of evidence from some medical expert, the ALJ's inferences amount to nothing more than mere speculation.").[3] Additionally, the ALJ's interpretation of Bergeron's condition is flawed because it is an impermissible ex post facto determination. Dr. Ramsay's opinion should not have been rejected on the basis of a retrospective review of Bergeron's vital signs and medication regime. The logic of the Secretary's Home Health Agency Manual on this point is convincing:

> The determination of whether the services are reasonable and necessary should be made in consideration that a physician has determined that the services ordered are reasonable and necessary. The services must, therefore, be viewed from the perspective of the condition of the patient *when the services were ordered* and what was, at the time, reasonably expected to be appropriate treatment for the illness or injury throughout the certification period.

Home Health Agency Manual § 205.1(A)(4) (emphasis added). *See Colton*, No. 90–244, slip op. at 12–13. The fact that Bergeron did not experience the complications sought to be avoided by the type of care described in §§ 409.33(a)(1)–(2) does not mean that those services were not reasonably expected to be appropriate treatment throughout the certification period, and thus reasonable and necessary. To hold otherwise would be illogical. The fact that skilled care has stabilized a claimant's health does not render that level of care unnecessary: "[a]n elderly claimant need not risk a deterioration of his fragile health to validate the continuing requirement for skilled care." *Folland*, No. 90–348, slip op. at 17.

Therefore, the ALJ's decision misapplies § 409.33(a)(2) and is not supported by substantial evidence in light of the treating physician's contemporaneous certification and report to the contrary. *See Holland*, 927 F.2d at 60; *Bodnar*, 903 F.2d at 126. *See also Colton*, No. 90–244, slip op. at 11–13; *Kertesz*, 788 F.2d at 163. The services provided Bergeron constitute reasonable and necessary skilled services under §§ 409.33(a)(1)–(2); therefore, the Secretary's determination that Bergeron was ineligible for home health care benefits is error.[4]

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is GRANT-

---

**3.** The *Kertesz* court noted that " '[b]y independently reviewing and interpreting ... laboratory reports [an] ALJ impermissibly substitute[s] his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.' " *Id.* at 163, (quoting *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985)). Further, it has been held in the disability context that "[w]hile the ALJ is authorized to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician, especially when that physician is the regular treating doctor for the disability applicant." *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir.1987) (ap-

plying the Tenth Circuit's "treating physician rule") (citations omitted). This preference for medical evidence from experts should be viewed in terms of the Second Circuit's decision in *Holland*.

**4.** The ALJ held that the disputed home health aide visits were not reasonable and necessary because the nursing services were not reasonable and necessary. R. 30. Because the health aide visits were ordered as part of a necessary skilled plan, R. 62–69, those visits should be covered as well.

ED, and the Secretary's motion for summary judgment is DENIED.